[Nos. C020585, C021766. Third Dist. July 31, 1996.]

PHILIP A. OLSEN, Plaintiff and Appellant, v.
BREEZE, INC., et al., Defendants and Respondents.

COUNSEL

Philip A. Olsen, in pro. per., for Plaintiff and Appellant.

Kronick, Moskovitz, Tiedemann & Girard, William A. Kershaw, Robin Leslie Stewart, Michael D. Rust, James T. Wiezel, McKinley & Smith, William C. McKinley, Timothy M. Smith and Evan Eickmeyer for Defendants and Respondents.

Hancock, Rothert & Bunshoft, Paul Rosenlund and David A. Greene for Defendants and Respondents and as Amici Curiae on behalf of Defendants and Respondents.

OPINION

**PUGLIA, P. J.**—This appeal concerns the legality of a release from liability required as a condition for purchasing, renting, or obtaining service on ski bindings. For reasons hereafter discussed, we shall conclude the use of such releases in the ski industry does not violate either state unfair competition laws (Bus. & Prof. Code, § 17200 et seq.) or the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.).

I

Plaintiff, Philip A. Olsen, is an attorney and "avid recreational skier" who for many years has represented in personal injury litigation plaintiffs who sustained injuries skiing. In December 1993, plaintiff took his skis to a shop operated by defendant Breeze, Inc. (Breeze) to be serviced, including the adjustment of his ski bindings. As a condition for the return of his equipment, plaintiff was required to sign a form which described the risks of

skiing and released Breeze from any liability for injury resulting from use of the equipment, including injury caused by negligence, breach of warranty, or product defect.[1] He refused to sign the form and was denied return of his equipment.

The requirement of a release by Breeze is consistent with industry custom. Ski equipment distributors throughout the state offer indemnity to retail and service outlets in the event of injury caused by the failure of ski bindings to release properly but only if the retailer or service provider has obtained the customer's signature on a release form supplied by the distributor, or one substantially similar thereto. This form is a release of liability, similar to that used by Breeze, often absolving both the retailer/service provider and the distributor from legal liability for injuries caused by failure of the equipment.

Plaintiff initiated this action on behalf of himself and all others in the state who own or seek to rent or purchase ski bindings of various brands. Named as defendants are six ski equipment distributors, Salomon/North America, Inc. (Salomon), Head Sports, Inc. (Head), Raichle-Molitor, USA, Inc. (Raichle), Geze Sports Products (Geze), Marker USA, Inc. (Marker), and Atomic Ski USA, Inc. (Atomic), who are alleged to supply "all, or substantially all," the ski bindings sold and rented in the state of California. Also named as defendants are Trimont Land Company (Trimont), the operator of two ski areas in Northern California, Breeze, a retailer/service provider and a class of all others situated similarly to either Trimont or Breeze. The trial court denied plaintiff's motion to certify a defendant class as alleged. Plaintiff does not challenge this ruling on appeal.

The complaint contains two causes of action. The first cause of action alleges violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.; hereafter CLRA). The second cause of action alleges unfair competition (Bus. & Prof. Code, § 17200 et seq.). Plaintiff alleges it is unlawful and unconscionable for defendants to require customers to sign releases of liability as a condition for obtaining goods or services. The CLRA cause of action is stated on behalf of a plaintiff class, while the unfair competition claim is stated on behalf of plaintiff alone. In addition to the two separately stated causes of action, the complaint contains two counts seeking, respectively, declaratory and injunctive relief.

---

[1] The release reads in relevant part: "I hereby release from any legal liability Breeze, Inc. (dba Breeze Ski Rentals) and its owners, agents and employees from any and all liability for damage and injury or death to myself or to any person or property resulting from the selection, installation, adjustment, maintenance or use of this equipment and for any claim based upon negligence, breach of warranty, contract, claim or product defect, or other legal theory, accepting myself, the full responsibility for any and all such damages or injury which may result."

During the pendency of this litigation, some of the defendants modified the language of their releases to conform with *Westlye* v. *Look Sports, Inc.* (1993) 17 Cal.App.4th 1715 [22 Cal.Rptr.2d 781] (*Westlye*). In *Westlye*, we held an express disclaimer of liability or assumption of risk will not insulate a distributor of ski equipment from strict liability for injuries caused by defective products.[2]

Based on the modified releases, the various defendants moved for summary adjudication of the unfair competition cause of action and for a determination the CLRA claim is without merit (Civ. Code, § 1781, subd. (c)(3)). The superior court granted these motions as to all defendants except Head and Raichle and entered judgments of dismissal. Plaintiff appeals from these judgments.

The matter proceeded to trial before the court without a jury as to Head and Raichle. The court granted the motion of these defendants to vary the order of proof, permitting the issues whether Head adequately modified its release and whether Raichle is no longer in a position to modify its release to conform to California law to be tried first. Head presented evidence that it changed its release form and communicated this change to its retail outlets. Raichle presented evidence that it is no longer authorized to distribute ski bindings in California. Head and Raichle moved for judgment (Code Civ. Proc., § 631.8). The superior court granted the motions and entered judgments of dismissal. Plaintiff also appeals from these judgments.

Plaintiff moved for an award of attorney fees against Salomon, Breeze and Trimont, contending the action had been the catalyst in inducing these defendants to modify their respective releases to conform to law. The superior court concluded plaintiff was not a prevailing party and denied the motion. Plaintiff appeals this order. We have consolidated the foregoing appeals for all purposes.[3]

II

We address first plaintiff's unfair competition cause of action. ■ Business and Professions Code section 17200 (section 17200) defines unfair competition as "any unlawful, unfair or fraudulent business act or practice . . . ." "The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal,

---

[2]The pertinent language of the releases as modified is in the appendix.

[3]During the pendency of this appeal, plaintiff stipulated to dismissal of the appeal as to Geze and Raichle. On July 14, this court entered an order dismissing the appeals as to those defendants.

statutory, regulatory, or court-made. (*People* v. *McKale* (1979) 25 Cal.3d 626, 632 [159 Cal.Rptr. 811, 602 P.2d 731].) It is not necessary that the predicate law provide for private civil enforcement. (*Samura* v. *Kaiser Foundation Health Plan, Inc.* (1993) 17 Cal.App.4th 1284, 1299 [22 Cal.Rptr.2d 20].) As our Supreme Court put it, section 17200 'borrows' violations of other laws and treats them as unlawful practices independently actionable under section 17200 et seq. (*Farmers Ins. Exchange* v. *Superior Court* (1992) 2 Cal.4th 377, 383 [6 Cal.Rptr.2d 487, 826 P.2d 730].) 'Unfair' simply means any practice whose harm to the victim outweighs its benefits. (*Motors, Inc.* v. *Times Mirror Co.* (1980) 102 Cal.App.3d 735, 740 [162 Cal.Rptr. 543].) 'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but only requires a showing members of the public ' "are likely to be deceived." ' (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1267 [10 Cal.Rptr.2d 538, 833 P.2d 545].)" (*Saunders* v. *Superior Court* (1994) 27 Cal.App.4th 832, 838-839 [33 Cal.Rptr.2d 438].)

Plaintiff contends the second cause of action states several forms of unfair competition associated with defendants' use of general releases, to wit: (1) imposing unenforceable contract terms; (2) using release forms likely to mislead the public; (3) causing the public to sign agreements they are not likely to understand; and (4) holding themselves out as competent while refusing to accept responsibility for their actions. Plaintiff argues the superior court erred in granting summary adjudication to Salomon, Breeze, Trimont, Atomic, and Marker as these defendants failed to negate all forms of unfair competition alleged.

Of the four categories of unfair competition relied upon by plaintiff, only the first, imposing unenforceable contract terms, requires more than a brief comment. In *People* v. *McKale* (1979) 25 Cal.3d 626 [159 Cal.Rptr. 811, 602 P.2d 731], the court concluded it was unfair competition for a mobilehome park operator to require tenants to sign rules and regulations containing unlawful terms. Notwithstanding the defendant's argument that these rules and regulations were not being enforced, the court explained: "When a mobilehome park operator requires tenants to sign park rules and regulations which the park is prohibited by law from enforcing, those tenants are likely to be deceived, and allegations of unfair competition based thereon are sufficient to withstand demurrer." (25 Cal.3d at p. 635.)

Plaintiff contends the releases at issue are unlawful, cannot be enforced, and hence their use constitutes unfair competition. Citing *Baker Pacific Corp.* v. *Suttles* (1990) 220 Cal.App.3d 1148 [269 Cal.Rptr. 709] (*Baker Pacific*), plaintiff first argues the releases are unlawful because they are overly broad. Secondly, relying on *Westlye*, plaintiff argues the releases

purport to cover strict product liability claims. Finally, plaintiff argues widespread industry use of general releases is unconscionable.

In *Baker Pacific*, the court held void as against public policy a release required as a condition of employment which contained terms violative of Civil Code section 1668. (220 Cal.App.3d at p. 1157.) Civil Code section 1668 declares violative of public policy contracts which "have for their object, directly or indirectly, to exempt anyone from the responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent . . . ." Pursuant to the release at issue in *Baker Pacific,* a subscribing employee undertook to assume *"all risks"* of exposure to asbestos, covenanted not to sue *"for, from and against any and all liability whatsoever,"* and waived *"any and all claims of every nature"* relating to asbestos exposure. (220 Cal.App.3d at p. 1151, italics in original.) The court concluded this language "clearly includes a release from liability for fraud and intentional acts and thus on its face violates the public policy as set forth in Civil Code section 1668." (220 Cal.App.3d at p. 1154.)

*Baker Pacific* is inapposite. That decision rests on the existence of a public interest in the employer-employee relationship. (220 Cal.App.3d at p. 1155.) Where the public interest is implicated, an agreement exempting a party from responsibility for negligence is void as against public policy. *(Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92, 96 [32 Cal.Rptr. 33, 383 P.2d 441] [a release required as a condition for admission to a private hospital]; *Walther* v. *Southern Pacific Co.* (1911) 159 Cal. 769, 772 [116 P. 51] [agreement purporting to exempt a common carrier from liability for negligence]; *Gardner* v. *Downtown Porsche Audi* (1986) 180 Cal.App.3d 713, 720 [225 Cal.Rptr. 757] [disclaimer by automobile repair garage].)

When the public interest is not implicated, private parties are free among themselves to shift a risk elsewhere than where the law would otherwise place it. *(Baker Pacific, supra,* 220 Cal.App.3d at p. 1152; *Gardner* v. *Downtown Porsche Audi, supra,* 180 Cal.App.3d at p. 716; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 631, p. 569.) Such agreements, in the context of sporting or recreational activities, have consistently been enforced. (See, e.g., *Paralift, Inc.* v. *Superior Court* (1993) 23 Cal.App.4th 748, 756 [29 Cal.Rptr.2d 177] [skydiving]; *Randas* v. *YMCA of Metropolitan Los Angeles* (1993) 17 Cal.App.4th 158, 162 [21 Cal.Rptr.2d 245] [swimming]; *Buchan* v. *United States Cycling Federation* (1991) 227 Cal.App.3d 134 [277 Cal.Rptr. 887] [bicycle racing]; *Saenz* v. *Whitewater Voyages, Inc.* (1990) 226 Cal.App.3d 758, 764 [276 Cal.Rptr. 672] [white-water rafting]; *Madison* v. *Superior Court* (1988) 203 Cal.App.3d 589, 599 [250 Cal.Rptr.

299] [scuba diving].) In *Westlye,* we held the public interest does not preclude enforcement of an agreement to bar claims for negligent adjustment of ski bindings. (*Westlye, supra,* 17 Cal.App.4th at p. 1735.)

Plaintiff's reliance on *Westlye,* as it relates to strict liability claims, is also misplaced. Assuming defendants were under a legal obligation to modify their releases in accordance with *Westlye,* nearly all did so during the pendency of this proceeding. (See appen.) For example, the original release of Salomon included "any claim based upon negligence, breach of warranty, contract, claim of product defect or other legal theory." As modified, the release reads, "any claim based upon negligence, breach of warranty, contract, or other legal theory." Atomic, whose original release did not mention product defect or strict liability, added language reading: "This document is a legally binding contract which is in[t]ended to provide a comprehensive release of liability, but is not intended to assert any claims or defenses which are prohibited by law."

The lone exception is Marker, whose modified release encompasses all claims based on "negligence, breach of warranty, strict products liability or any other legal theories." However, Marker's modified release also states: "This document . . . is intended to provide a comprehensive release of liability, but it is not intended to assert any claims or defenses which are prohibited by law. The specific rights of the parties may vary from state to state."

Plaintiff contends the modified releases are unlawful despite these changes because they are ambiguous regarding product defect or strict liability claims. Plaintiff insists defendants' releases must expressly exclude such claims. As we shall explain, *post,* defendants are under no duty to outline in their releases the details of their customers' legal rights. As long as the releases do not expressly include strict liability claims or, alternatively, do exclude claims prohibited by law, which in this state would embrace strict liability claims, they comply with the decision in *Westlye* (*supra,* 17 Cal.App.4th 1715 [22 Cal.Rptr.2d 781]).

Plaintiff argues that modification to comply with *Westlye* does not preclude injunctive relief to prohibit repetition of past misconduct. Defendants concede an injunction may be issued to prevent recurrence of past misconduct. However, even assuming the use of the old releases was actionable, Business and Professions Code section 17203 provides a court "may" enjoin *any person who* has engaged in unfair competition. The trial court presumably chose not to exercise this power and we find no abuse of discretion under the circumstances.

■ We now consider plaintiff's theory the releases are unlawful because they are unconscionable. Plaintiff argues the agreements skiers are required to sign are contracts of adhesion which are objectively unreasonable under the circumstances presented. Specifically, he cites the sweeping use of releases in the ski industry and the unreasonableness of shifting the risk of injury away from the only party in a position to protect against it.

Assuming the doctrine of unconscionability may be used affirmatively as the predicate of an unfair competition claim (see *California Grocers Assn.* v. *Bank of America* (1994) 22 Cal.App.4th 205, 217, 218 [27 Cal.Rptr.2d 396]), it is inapplicable here. ■ Unconscionable agreements typically involve contractual provisions which operate in a harsh and one-sided manner without any justification. (*Shaffer* v. *Superior Court* (1995) 33 Cal.App.4th 993, 1001 [39 Cal.Rptr.2d 506].) They have both a procedural and a substantive element. "The procedural element focuses on two factors: oppression and surprise. Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. . . . Surprise involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior bargaining position. . . . Substantive unconscionability inquires into whether the one-sidedness of an agreement is objectively justified. . . . This component is tied to procedural unconscionability and requires a balancing test, such that '"the greater the unfair surprise or inequality of bargaining power, the less unreasonable the risk reallocation which will be tolerated."'" (*Westlye, supra,* 17 Cal.App.4th at p. 1736, citations omitted.)

For purposes of defendants' summary adjudication motions, we consider the evidence in the light most favorable to plaintiff. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) Based on this evidence, and the reasonable inferences which may be drawn therefrom, the ultimate question of unconscionability is one of law which we consider de novo. (*Ilkhchooyi* v. *Best* (1995) 37 Cal.App.4th 395, 411 [45 Cal.Rptr.2d 766].)

■ There is nothing inherently unreasonable in skiers agreeing with ski equipment distributors or service providers to allocate to skiers the risk of injury from failure of a ski binding to release properly. Skiers already assume the risks inherent in the sport. (*Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696].) The releases at issue deal with risks associated with negligent acts which increase the risks inherent in skiing. Furthermore, consumers are not denied a meaningful choice by virtue of the common use of releases. Their choice to ski already exposes them to a number of risks inherent in that activity. Skiing, like other athletic or

recreational pursuits, however beneficial, is not an essential activity. (See, e.g., *Randas* v. *YMCA of Metropolitan Los Angeles*, *supra*, 17 Cal.App.4th at p. 162 [swimming].)

Furthermore, even assuming an inequality of bargaining power, there is no credible evidence release agreements are a surprise to skiers.[4] The agreements themselves are short and the pertinent release language is as prominent as other language in the form. There is no evidence defendants conceal or misrepresent the language of the release in order to obscure its effect. Given the prevalence of releases in sporting and recreational activities, the failure of defendants to utilize releases of liability would be the greater surprise.

This is not to say that under appropriate circumstances we would not find a broadly or vaguely worded release unconscionable. However, such a determination must await those circumstances. Courts do not render advisory opinions. Courts deal with actual, not hypothetical, controversies. All we conclude here is that it is not unconscionable for ski equipment distributors and retailers to require and use the releases at issue as a condition for doing business with them.

We turn now to plaintiff's alternative theories of unfair competition. Plaintiff contends defendants' practices are likely to mislead the public regarding their legal rights and cause customers to sign releases they do not understand. However, the complaint alleges only that defendants require customers to sign releases. It alleges no conduct by which defendants mislead their customers or cause them to sign documents they do not comprehend. Nor has plaintiff presented any such evidence.

 In order effectively to exculpate a tortfeasor from liability for future negligence or other misconduct, a release "must be clear, unambiguous and explicit in expressing the intent of the parties." (*Madison* v. *Superior Court*, *supra*, 203 Cal.App.3d at p. 598.) " 'Such an agreement, read as a whole, must clearly notify the prospective releasor or indemnitor of the effect of signing the agreement.' [Citation.]" (*Ibid.*) A release effective as to one type of misconduct may not be effective as to another. (See *Westlye*, *supra*, 17 Cal.App.4th at pp. 1740, 1747.)

The mere fact a release is not sufficiently clear to be enforceable under *all* conceivable circumstances does not render its use unfair competition. We are

---

[4]Plaintiff presented the declaration of Jeff Bendorf, a ski binding mechanic and manager of a ski rental shop, who indicated skiers rarely read releases before signing them and he never understood the releases as relieving ski shops of their obligation to service bindings properly. As will be explained, failure of customers to read or understand the agreements they sign is not the responsibility of the ski shops or distributors.

aware of no general duty owed by one contracting party to another to explain the other's legal rights in connection with the agreement. We will not presume a contracting party who is uncertain regarding the breadth of a release will interpret the document broadly and thereby forego relief which would otherwise be available. We assume contracting parties are aware of their legal rights or will seek competent legal assistance where necessary. It is pure speculation a party faced with a release which may or may not cover a given injury will forego the possibility of redress.

This does not change merely because the party obtaining a release of liability holds himself out as competent to perform the task in question. While it may be good business to stand behind one's work, this is not an obligation imposed by law absent other circumstances.

For the foregoing reasons, we conclude the superior court did not err in granting summary adjudication to Salomon, Breeze, Trimont, Atomic, and Marker on the unfair competition cause of action.[5]

## III

 Having concluded defendants' use of general releases is not unconscionable, we necessarily dispose of plaintiff's CLRA claim. The first cause of action alleges a CLRA violation based solely on the purported unconscionability of the releases coupled with the indemnity arrangements between the distributors and their retail and service outlets. (See Civ. Code, § 1770, subd. (e).) The superior court concluded this claim is without merit as to Salomon, Breeze, Trimont, Atomic, and Marker. (Civ. Code, § 1781, subd. (c)(3).)

Plaintiff contends the superior court erred in disposing of this claim pursuant to Civil Code section 1781, subdivision (c)(3). Civil Code section 1781 (section 1781) permits a consumer to bring an action under the CLRA on behalf of himself and a class of others similarly situated. (§ 1781, subd. (a).) Subdivision (c) of that section reads:

"If notice of the time and place of the hearing is served upon the other parties at least 10 days prior thereto, the court shall hold a hearing, upon

---

[5]Plaintiff contends an issue of fact exists regarding the proper interpretation of the releases of Salomon, Breeze, and Trimont in that these defendants submitted supplemental responses to interrogatories indicating the releases are not intended to relieve them of a duty of care but only to protect against "frivolous lawsuits." However, regardless of the proclaimed intent of these defendants as to the purpose of these releases, their interpretation is governed by general contract principles. Thus parol evidence is inadmissible if the contract terms are unambiguous. (*Appleton* v. *Waessil* (1994) 27 Cal.App.4th 551, 554 [32 Cal.Rptr.2d 676].) We find the subject releases unambiguous in their application to negligence claims.

motion of any party to the action which is supported by affidavit of any person or persons having knowledge of the facts, to determine if any of the following apply to the action:

"(1) A class action pursuant to subdivision (b) is proper.

"(2) Published notice pursuant to subdivision (d) is necessary to adjudicate the claims of the class.

"(3) The action is without merit or there is no defense to the action.

"A motion based upon Section 437c of the Code of Civil Procedure shall not be granted in any action commenced as a class action pursuant to subdivision (a)."

Plaintiff contends the trial court's resort to section 1781, subdivision (c)(3) was simply a summary adjudication of the CLRA claim by another name in violation of the last paragraph of that subdivision. According to plaintiff, section 1781, subdivision (c)(3) may be used only to determine if the action may be maintained as a class action, not whether the action may be maintained at all. We disagree.

 In matters of statutory construction our fundamental concern is legislative intent. (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) In order to determine intent, we begin with the language of the provision. (*Ibid.*) Section 1781, subdivision (c)(3) provides a means for determining if "[t]he action is without merit or there is no defense to the action." This language could not be clearer. Furthermore, section 1781, subdivision (c)(1) already provides a mechanism for determining if the matter is properly maintainable as a class action. Thus plaintiff's interpretation would render section 1781, subdivision (c)(3) superfluous. In matters of statutory construction, an interpretation which renders a provision nugatory should be avoided. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) Section 1781, subdivision (c)(3) provides a means of resolving CLRA actions prior to trial, as the trial court did in this instance. (See *Kagan* v. *Gibraltar Savings & Loan Assn.* (1984) 35 Cal.3d 582, 589, fn. w [200 Cal.Rptr. 38, 676 P.2d 1060]; *Collins* v. *Safeway Stores, Inc.* (1986) 187 Cal.App.3d 62, 70-71 [231 Cal.Rptr. 638].)

IV

 Relying on a number of alleged procedural irregularities, plaintiff contends the trial court erred in dismissing the third and fourth "causes of

action" as against Salomon, Breeze, Trimont, Atomic, and Marker. For example, plaintiff argues the court was without power to grant the motion of Atomic and Marker for judgment on the pleadings after having overruled demurrers to the same "causes of action" where there had been no intervening change in the law. He further contends the court was without power to dismiss as to defendants Salomon, Breeze, and Trimont on the third and fourth "causes of action" as these defendants did not move for such relief.

■ "California defines a 'cause of action' in accord with Pomeroy's 'primary right' theory. . . . A cause of action consists of (1) a *primary right* possessed by the plaintiff and a corresponding *primary duty* imposed upon the defendant, and (2) a *delict or wrong* committed by the defendant which constitutes a breach of such primary right and duty." (*Miranda* v. *Shell Oil Co.* (1993) 17 Cal.App.4th 1651, 1658 [26 Cal.Rptr.2d 655], citations omitted and italics in original; 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 23, pp. 66-67.)

Examples of primary rights include the right to be free from personal injury (*Mattson* v. *City of Costa Mesa* (1980) 106 Cal.App.3d 441, 447 [164 Cal.Rptr. 913]), the right to possession of real property (*McNulty* v. *Copp* (1954) 125 Cal.App.2d 697, 707-708 [271 P.2d 90]), the right to possession of personal property (*ibid.*), and the right to performance of a contractual obligation (*Holmes* v. *David H. Bricker, Inc.* (1969) 70 Cal.2d 786, 790 [76 Cal.Rptr. 431, 452 P.2d 647]).

Primary rights must be distinguished from the relief sought. For example, in *Verdier* v. *Verdier* (1962) 203 Cal.App.2d 724 [22 Cal.Rptr. 93], a divorce action, the court explained: "The right is not the right to procure a *divorce*, which pertains merely to the remedy; other remedies, such as the right to separation, to maintenance, etc., may accrue from the same misconduct. The primary right consists of the right not to be subjected to extreme cruelty, not to be deserted by one's spouse, not to have one's spouse engage in adulterous conduct, and the like. Presumably facts involving a violation of each of these rights may form a separate cause of action." (203 Cal.App.2d at p. 738, italics in original.)

■ Plaintiff's so-called third and fourth causes of action do not allege violation of a primary right distinct from the first and second causes of action alleging, respectively, a violation of CLRA and unfair competition. The third "cause of action" alleges defendants' practices deny plaintiff the right to obtain ski bindings and service from one willing to accept responsibility for his actions. Plaintiff alleges defendants must be enjoined from such conduct. In the fourth "cause of action," plaintiff seeks a declaration of

defendants' duty to provide "defect-free products" and to "exercise due care in the distribution, sale, mounting, maintenance, adjustment, testing, and inspection of safety bindings." However, plaintiff alleges no basis for his purported right or defendants' purported duty distinct from the CLRA or unfair competition laws.[6] These "causes of action" do not allege violations of separate primary rights. Rather they seek alternative forms of relief. Hence, defendants were not required to eliminate them in order to obtain summary adjudication and judgment of dismissal.

## V

We now consider the judgment entered in favor of defendant Head. Plaintiff contends the court erred in granting Head's motion under Code of Civil Procedure section 631.8 (hereafter section 631.8). This section permits a party in a court trial to move for judgment following presentation of the other party's evidence. The court shall weigh the evidence and may enter judgment for the moving party or decline to enter judgment until the close of all evidence. Plaintiff contends the court entered judgment without giving him an opportunity to present his evidence.

Plaintiff's argument is disingenuous. At the outset of trial, the court granted Head's motion to try first the issue whether Head adequately amended its release. The court also varied the order of proof to permit Head to proceed first. Head presented evidence regarding the modification of its release (see appen.) and the communication of this modification to its dealers. Plaintiff declined the court's invitation to present rebuttal evidence.[7]

At this stage of the proceedings, the only issue before the court was whether Head adequately modified its release language. Having given plaintiff an opportunity to present evidence bearing on this issue, the court was authorized by section 631.8 to enter judgment for Head.[8]

---

[6]Plaintiff makes the preposterous argument the fourth "cause of action" states a claim for declaratory relief based on an actual controversy over the proper interpretation of the releases. This is like saying a cause of action exists where two biblical scholars disagree over the correct interpretation of a phrase in the Bible or two archeologists disagree over the meaning of symbols etched in a stone. Disagreement over interpretation does not give rise to a cause of action until it leads to breach of a primary right. The only primary rights alleged to have been breached are those arising from the unfair competition laws and the CLRA.

[7]The trial was actually conducted against both Head and Raichle. Raichle presented evidence it no longer had a distribution relationship in California. Plaintiff presented rebuttal evidence regarding this issue but not as to Head's claim that its modified release language was acceptable.

[8]Having so concluded, we need not address Head's argument the superior court was authorized by Code of Civil Procedure section 438 to enter judgment on the pleadings at any

## VI

Plaintiff contends the court erred in awarding costs to Salomon, Breeze, Trimont, Atomic, and Marker because these defendants did not prevail in the action. Code of Civil Procedure section 1032 permits the recovery of costs by the prevailing party. As used in this section, "prevailing party" includes "the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. When any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed may apportion costs between the parties on the same or adverse sides . . . ." (Code Civ. Proc., § 1032, subd. (a)(4).)

Plaintiff contends he, rather than the indicated defendants, was the prevailing party because this action was the catalyst forcing those defendants to modify their releases to conform to law. Defendants respond plaintiff was not the prevailing party because he did not receive the relief he sought in the litigation.

These contentions miss the mark. The question here is not whether plaintiff was the prevailing party but whether defendants were. Under the definition provided in Code of Civil Procedure section 1032, where other than monetary relief is obtained, the prevailing party is as determined by the court and the court may, in its discretion, apportion costs. In this instance, defendants were prompted to modify their releases only marginally, whereas plaintiff sought to outlaw the use of releases altogether. On this basis, the superior court concluded defendants were the prevailing parties and awarded costs accordingly. This conclusion is supported by the record.

## VII

Plaintiff contends the court erred in denying his motion for attorney fees against Salomon, Breeze, and Trimont (hereafter collectively the Salomon defendants). Plaintiff argues he is entitled to attorney fees under both Code of Civil Procedure section 1021.5 and Civil Code section 1780, subdivision (d). The Salomon defendants argue plaintiff is not entitled to attorney fees as he was not the prevailing party and in any event he represented himself in these proceedings.

---

time after opening statements. Since Head's motion was not made pursuant to this section and was not based on the pleadings but on the evidence presented at trial, the argument, viewed most charitably, is a non sequitur.

Code of Civil Procedure section 1021.5, the codification of the private attorney general doctrine, authorizes an award of attorney fees to a "successful party" "in any action which has resulted in the enforcement of an important right affecting the public interest" where: "(a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." The award of attorney fees under this provision is a matter of trial court discretion. (See *Press* v. *Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 317 [193 Cal.Rptr. 900, 667 P.2d 704].)

Civil Code section, 1780(d) provides for an award of costs and attorney fees in an action brought under the CLRA. It reads: "The court shall award court costs and attorney[] fees to a prevailing plaintiff in litigation filed pursuant to this section. Reasonable attorney[] fees may be awarded to a prevailing defendant upon a finding by the court that the plaintiff's prosecution of the action was not in good faith."

Plaintiff contends he is a successful or prevailing party if either the lawsuit was a catalyst in motivating the defendants to modify their behavior or he achieved the primary relief sought in the action. Plaintiff argues he prevailed because the lawsuit prompted defendants to modify their releases to exclude product defect or strict liability claims and this resulted in a substantial benefit to the skiing public. The Salomon defendants counter they modified their releases not as a result of the lawsuit but in response to *Westlye*, supra, 17 Cal.App.4th 1715.

The record belies the Salomon defendants' argument. *Westlye* was decided on August 23, 1993. This action was filed on January 14, 1994. On February 22, 1994, the Salomon defendants filed a memorandum in opposition to plaintiff's motion for preliminary injunction. In it, the Salomon defendants argued their releases, as then worded, were not unlawful. The Salomon defendants also incorporated the arguments asserted by Head and Raichle in their memorandum in opposition to plaintiff's motion. In that memorandum, Head and Raichle argued *Westlye* did not prohibit the use of releases which include strict liability claims but merely held such releases are unenforceable. The Salomon defendants repeated this argument in their reply memorandum in support of demurrers filed on March 25, 1994. It was not until after the superior court overruled the defendants' demurrers that the Salomon defendants changed their strategy and modified their releases to comply with *Westlye*, *supra,* 17 Cal.App.4th 1715.

Nevertheless, we find no error in denying plaintiff's motion for attorney fees. The superior court concluded plaintiff was not the prevailing party. In

*Westside Community for Independent Living, Inc.* v. *Obledo* (1983) 33 Cal.3d 348, 353 [188 Cal.Rptr. 873, 657 P.2d 365], the court explained: "[A]n award of attorney fees may be appropriate where 'plaintiffs' lawsuit was a *catalyst* motivating defendants to provide the primary relief sought . . . .' A plaintiff will be considered a 'successful party' where an important right is vindicated 'by activating defendants to modify their behavior.' " (Italics in original, citations omitted.) Under the circumstances presented here, it was reasonable for the superior court to conclude plaintiff did not obtain the "primary relief sought," that being a prohibition against releases of liability, and did not vindicate "an important right," inasmuch as skiing is not a matter of public interest.

Moreover, since plaintiff prosecuted this action in propria persona, his eligibility to recover attorney fees is in doubt. In *Trope* v. *Katz* (1995) 11 Cal.4th 274 [45 Cal.Rptr.2d 241, 902 P.2d 259], the court concluded an attorney representing himself in a breach of contract action, where the contract provides for the recovery of attorney fees in any dispute arising from the contract, is not entitled to attorney fees under Civil Code section 1717. However, because we conclude the superior court did not err in finding plaintiff was not a prevailing party, we need not decide whether *Trope* v. *Katz, supra,* is applicable to attorney fees claims under Code of Civil Procedure section 1021.5 or Civil Code section 1780, subdivision (d).

The judgments of dismissal and the order denying attorney fees are affirmed. Defendants shall recover their costs on appeal.

Nicholson, J., and Morrison, J., concurred.

## APPENDIX

The releases of the various respondents, as modified after commencement of this litigation, read as follows:

*Salomon*

"I hereby release from any legal liability the ski shop and its owners, agents, and employees, as well as the manufacturers and distributors of this equipment from any and all liability for damage and injury or death to myself or to any person or property resulting from the selection, installation, maintenance, adjustment or use of this equipment and for any claim based upon negligence, breach of warranty, contract or other legal theory, accepting myself the full responsibility for any and all such damage, injury or death which may result."

*Breeze*

"I hereby release from any legal liability Breeze, Inc. (dba Breeze Ski Rentals) and its owners, agents and employees, as well as the manufacturers and distributors of this equipment from any and all liability for damage and injury or death to myself or to any person or property resulting from the selection, installation, maintenance, adjustment, or use of this equipment and for any claim based upon negligence, breach of warranty, contract, claim or other legal theory, accepting myself the full responsibility for any and all such damage, injury or death which may result."

*Trimont*

"I hereby agree to release from any legal liability TRIMONT Land Company, dba Northstar-at-Tahoe, and its owners, agents, employees, officers, directors and affiliated companies, as well as the manufacturers and distributors of this equipment, from any and all liability for damage and injury or death to myself or to any person or property resulting from the selection, installation, adjustment, maintenance and use of this equipment, and for any claim based upon negligence, breach of warranty, contract or other legal theory, accepting myself the full responsibility for any and all such damage, injury or death which may result."

*Head*

"I hereby forever release this ski shop from, and indemnify it and hold it harmless for, any and all responsibility or legal liability for any injuries or damages to any user of any equipment listed on this form, whether or not such injuries or damages are caused by the NEGLIGENCE of this ski shop. I agree NOT to make a claim against or sue this ski shop for injuries or damages relating to skiing or snowboarding and/or the use of this equipment and I accept full responsibility for those injuries or damages." (Emphasis in original.)

*Atomic*

"I hereby agree to freely and expressly assume and accept any and all risks of injury to the user of this equipment while skiing. Accordingly, I hereby release the ski shop and its owners, agents, and employees, and ATOMIC and its owners agents and employees, from any and all liability for damage and injury to myself or to any person or property resulting from negligence, breach of warranty, the selection, installation, maintenance, adjustment and use of the equipment and accept myself the full responsibility for any and all such damage or injury which may result.

". . . . . . . . . . . . . . . . . . . . . . .

"This release of liability applies to this shop as well as to all manufacture[r]s and distributors of the equipment that is the subject of this rele[ase]. This document is a legally binding contract which is in[t]ended to provide a comprehensive release of liability, but it is not intended to assert any claims or defenses which are prohibited by law. The specific rights of the parties under this contract may vary from state to state."

*Marker*

"4. To the fullest extent allowed by law, I hereby agree to RELEASE, indemnify and hold harmless the ski shop and all manufacturers and distributors of this equipment, and their owners, agents and employees, from any and all liability for damage, injury or death to myself or to any other person or property which may result while using this equipment, and that I waive any right to present any legal claim or suit against these persons, whether based on negligence, breach of warranty, strict products liability or any other legal theories.

"...................................
"6. This document is a legally binding contract which supersedes any other agreements or representations by or between the parties and which is intended to provide a comprehensive release of liability, but it is not intended to assert any claims or defenses which are prohibited by law. The specific rights of the parties may vary from state to state."