[No. A087546. First Dist., Div. Five. Apr. 27, 2000.]

JAMES ROSKIND, Plaintiff and Appellant, v.
MORGAN STANLEY DEAN WITTER & CO., Defendant and
Respondent.

## COUNSEL

Berman, DeValerio, Pease & Tabacco, Joseph J. Tabacco, Jr., Nicole Lavallee, Jennifer S. Abrams and Susan G. Kupfer for Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Jonathan C. Dickey, Gail E. Lees, Steven S. Kimball and Steven Buchholz for Defendant and Respondent.

## OPINION

**STEVENS, J.**—Does federal law preempt a state law cause of action brought under California's unfair competition law (UCL), Business and Professions Code section 17200 et seq.,[1] where a brokerage firm is alleged to have violated its duty to its customers, by not executing their orders for stock sales in a fair and timely manner, and by instead "trading ahead" for its own benefit before processing those sales for its customers? We conclude there is no provision of federal law that preempts a state law cause of action under the UCL in these circumstances, and therefore we must reverse the judgment of the trial court.

---

[1]Unless otherwise indicated, all further section references are to the Business and Professions Code.

## I. FACTS AND PROCEDURAL HISTORY

As this appeal proceeds from a judgment following a ruling sustaining a demurrer without leave to amend, we must accept the facts as properly pleaded by appellant James Roskind.

Appellant alleged that he owned a large block of stock in Netscape, which was listed on the NASDAQ (National Association of Securities Dealers Automated Quotation System) exchange. Appellant instructed his stockbroker, Morgan Stanley Dean Witter & Co. (Morgan), to sell 14,000 shares of Netscape stock on his behalf. Instead of selling appellant's stock in a timely fashion, for the $68 per share at which the stock was then trading, Morgan delayed the sale of appellant's stock for a crucial 77 minutes, during which time the value of Netscape stock dropped to $65.50 per share. During this delay period, Morgan "traded ahead" by selling its own large block of Netscape stock first, at $66 per share, then sold appellant's stock at prices between $65.25 and $65.75 per share. Some of the sales of Netscape stock that Morgan executed for appellant were at a price that was so low that it was outside the "bid/ask range" established for Netscape at the time of those sales. As a result of Morgan's delay and its trading ahead, appellant lost more than $34,000, which he would otherwise have gained if his stock had been sold in a timely fashion.

Appellant complained about Morgan's behavior in trading ahead in Netscape stock, first to Morgan, and then to the Market Regulation Committee of the National Association of Securities Dealers, Inc. (NASD), a private self-regulating group of dealers on the NASDAQ exchange. NASD investigated the matter, and Morgan decided to accept a settlement of charges brought by the NASD. The settlement between NASD and Morgan resulted in the censure of Morgan by NASD, the imposition of a fine of $35,000, and the repayment to appellant of more than $34,000. Morgan also made repayment to two other affected customers. However, Morgan did not pay appellant the entire interest he claimed was also due on the amount of the loss. Nor was Morgan ordered to repay any other customers, other than appellant and the two customers named in the NASD settlement.

Appellant then brought this class action lawsuit, seeking restitution and injunctive relief for himself and all other similarly situated customers of Morgan who had lost money as a result of Morgan's practice of trading ahead. His complaint states two causes of action arising under California state law. The first cause of action, brought under the UCL, alleges that the practice of trading ahead is an unfair and unlawful business practice under the UCL. The second cause of action alleges a breach of fiduciary duty by Morgan in trading ahead of its clients.

Morgan sought to remove the lawsuit from state court to the federal district court for the Northern District of California. However, the federal court found that the complaint did not raise a claim within the federal court's jurisdiction, and therefore was not properly removable. The federal court then remanded the action to state court.

When the matter returned to state court on remand, Morgan filed a demurrer, contending that federal law preempted appellant's claims. The trial court ultimately sustained the demurrer without leave to amend on the grounds of federal preemption. This appeal followed.

## II. DISCUSSION

### A. *Standard of review*

■■ "For purposes of ruling on a demurrer, the court assumes the truth of all well-pleaded allegations of a complaint. The ability of the plaintiff to prove them is not in issue." (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1041, fn. 4 [80 Cal.Rptr.2d 828, 968 P.2d 539] (*Diamond*).) Instead, the facts alleged must be treated as having been admitted, and we review de novo to determine whether the facts as pleaded could entitle the plaintiff to any legal remedy as a matter of law. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38 [77 Cal.Rptr.2d 709, 960 P.2d 513] (*Quelimane*).)

A demurrer merely tests the legal sufficiency of the complaint, not its factual truth. (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497 [57 Cal.Rptr.2d 406].) On appeal, "[w]e give the complaint a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citations.] We deem to be true all material facts properly pled. [Citation.]" (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501 [82 Cal.Rptr.2d 368].) "In other words, 'plaintiff need only plead facts showing that he may be entitled to some relief [citation].' (*Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].)" (*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032] (*Gruenberg*); accord, *Quelimane, supra,* 19 Cal.4th at p. 38; *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].)

■■ Despite these uniform authorities holding that we are presented with a pure question of law that we must review de novo, Morgan argues that we should review only for an abuse of discretion. We reject this argument. The cases cited by Morgan for this result do not support its position as to a

demurrer, and, in the review of a judgment following trial, deal instead with the very different issue of whether a court in a UCL action may grant equitable relief, such as an injunction. (See *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 179 [83 Cal.Rptr.2d 548, 973 P.2d 527] (*Cel-Tech*) [UCL remedies are generally limited to civil penalties, restitution and injunctive relief]; *Olsen v. Breeze, Inc.* (1996) 48 Cal.App.4th 608, 620 [55 Cal.Rptr.2d 818] [no abuse of discretion where court declined to grant injunctive relief, because claim of unenforceability of contract was without merit]; *California Grocers Assn. v. Bank of America* (1994) 22 Cal.App.4th 205, 215-218 [27 Cal.Rptr.2d 396] [trial court abused its discretion by granting injunctive relief, because claims of unconscionability were without merit].)

In the instant case, we do not review an order granting or denying injunctive relief following trial. Instead, we review a judgment entered after the sustaining of a demurrer without leave to amend, which presents the question of whether " ' "it appears that the plaintiff is entitled to any relief at the hands of the court against the defendants." ' " This presents "a pure question of law." (*CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1530 [282 Cal.Rptr. 80], quoting *Gruenberg, supra,* 9 Cal.3d at p. 572.) We construe the allegations of the complaint liberally " 'with a view to substantial justice between the parties.' " (*CAMSI IV, supra,* 230 Cal.App.3d at p. 1530, citing, inter alia, Code Civ. Proc., § 452.)

## B. *The UCL Cause of Action Was Not Preempted by Federal Law*

### 1. *Background on the UCL*

■ Appellant's first cause of action rests on section 17200, the main substantive provision of the UCL. The remedies available under this law are "cumulative . . . to the remedies or penalties available under all other laws of this state." (§ 17205.) The UCL "does not proscribe specific practices. Rather, as relevant here, it defines 'unfair competition' to include 'any unlawful, unfair or fraudulent business act or practice.' (§ 17200.) Its coverage is 'sweeping, embracing " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " ' " (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1200 [17 Cal.Rptr.2d 828, 847 P.2d 1044], quoting *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 113 [101 Cal.Rptr. 745, 496 P.2d 817].) . . . By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable. (*State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1103 [53 Cal.Rptr.2d 229], citing *Farmers Ins. Exchange*

v. *Superior Court* [(1992)] 2 Cal.4th [377,] 383 [6 Cal.Rptr.2d 487, 826 P.2d 730].)" (*Cel-Tech, supra,* 20 Cal.4th at p. 180, fn. omitted.)

"However, the law does more than just borrow. The statutory language referring to 'any unlawful, unfair *or* fraudulent' practice (italics added) makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law. 'Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent. "In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." ' (*Podolsky* v. *First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647 [58 Cal.Rptr.2d 89], quoting *State Farm Fire & Casualty Co.* v. *Superior Court, supra,* 45 Cal.App.4th at p. 1102.)" (*Cel-Tech, supra,* 20 Cal.4th at p. 180.)

" '[T]he Legislature . . . intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur. Indeed, . . . the section was intentionally framed in its broad, sweeping language, precisely to enable judicial tribunals to deal with the innumerable " 'new schemes which the fertility of man's invention would contrive.' " (*American Philatelic Soc.* v. *Claibourne* (1935) 3 Cal.2d 689, 698 [46 P.2d 135] [(*Claibourne*)].) As the *Claibourne* court observed: "When a scheme is evolved which on its face violates the fundamental rules of honesty and fair dealing, a court of equity is not impotent to frustrate its consummation because the scheme is an original one. . . ." (3 Cal.2d at pp. 698-699 . . . ; accord, *FTC* v. *The Sperry & Hutchinson Co.* (1972) 405 U.S. 233, 240 [31 L.Ed.2d 170, 177, 92 S.Ct. 898].) With respect to "unlawful" or "unfair" business practices, [former] section 3369 [today section 17200] specifically grants our courts that power. [¶] In permitting the restraining of all "unfair" business practices, [former] section 3369 [today section 17200] undeniably establishes only a wide standard to guide courts of equity; as noted above, given the creative nature of the scheming mind, the Legislature evidently concluded that a less inclusive standard would not be adequate.' (*Barquis* v. *Merchants Collection Assn., supra,* 7 Cal.3d at pp. 111-112, fn. omitted.) '[I]t would be impossible to draft in advance detailed plans and specifications of all acts and conduct to be prohibited [citations], since unfair or fraudulent business practices may run the gamut of human ingenuity and chicanery.' (*People* ex rel. *Mosk* v. *National Research Co. of Cal.* [(1962)] 201 Cal.App.2d [765,] 772 [20 Cal.Rptr. 516].)" (*Cel-Tech, supra,* 20 Cal.4th at p. 181.) Under these broad and sweeping precedents, it is clear that the UCL could potentially provide a remedy for the conduct in issue here, if the UCL is not preempted by federal law in this context. (See *Diamond, supra,* 19 Cal.4th at pp. 1046-1047.)

## 2. Federal Law Supplements, but Does Not Preempt, State Law in This Area.

■ Congress contemplated that federal law would generally only supplement, not replace, state laws that would otherwise apply in this area of securities regulation. As our Supreme Court recently observed when turning aside a challenge to the application of California's state securities laws to interstate securities sales: "The contention that state exercise of jurisdiction over interstate transactions would somehow be inconsistent with federal law and thus violate the supremacy clause (U.S. Const., art. VI, cl. 2) also lacks merit. [¶] The Securities Exchange Act of 1934 (15 U.S.C. § 78bb (a)) makes it clear that, except to the extent it has been subsequently modified by the Securities Litigation Uniform Standards Act of 1998, federal law in this arena supplements, but does not displace state regulation and remedies." (*Diamond, supra,* 19 Cal.4th at pp. 1056-1057.) "Congress plainly contemplated the possibility of dual litigation in state and federal courts relating to securities transactions." (*Matsushita Elec. Industrial Co. v. Epstein* (1996) 516 U.S. 367, 383 [116 S.Ct. 873, 882, 134 L.Ed.2d 6]; *Merrill Lynch, Pierce, Fenner & Smith v. Ware* (1973) 414 U.S. 117, 137-140 [94 S.Ct. 383, 394-396, 38 L.Ed.2d 348] [statutory remedies available under California state law were not preempted by rules of the New York Stock Exchange or congressional enactments].)

Consistent with this analysis, case authority clearly provides that violation of a federal law may serve as a predicate for a section 17200 action. (*State Farm Fire & Casualty Co. v. Superior Court, supra,* 45 Cal.App.4th at pp. 1102-1103; *Citizens for a Better Envir. v. Union Oil of Cal.* (N.D.Cal. 1997) 996 F.Supp. 934.)

Guided by this case law and legal background, we conclude federal law does not preempt the state law claims in issue here. Rather, as our Supreme Court in *Diamond* held, "federal law in this arena supplements, but does not displace state regulation and remedies." (*Diamond, supra,* 19 Cal.4th at p. 1057.) Thus, any federal law remedy is merely a supplement to the state law remedies available, and federal law does not preempt the state law claims we review.

This result becomes even more clear, when we consider that our Supreme Court in *Diamond* cited but declined to follow the line of out-of-state cases addressing the very different issue of "order flow payments," whose application is urged here by Morgan. (*Guice v. Charles Schwab & Co., Inc.* (1996) 89 N.Y.2d 31 [651 N.Y.S.2d 352, 674 N.E.2d 282] (*Guice*); *Dahl v. Charles Schwab & Co., Inc.* (Minn. 1996) 545 N.W.2d 918 (*Dahl*). *Guice* and *Dahl*

held that the application of state laws would be preempted to the extent state law would otherwise apply to bar order flow payments or incentive payments to brokers who placed their customers' orders through a particular wholesaler or market maker in stocks. Preemption however was based upon the fact that the Securities and Exchange Commission (SEC) had specifically decided not to outlaw, and had in fact effectively legalized, these order flow payments as long as the payments were disclosed to customers.

Although Justice Brown in her dissent in *Diamond* sought to read *Guice* and *Dahl* more broadly, in the manner Morgan urges us to do, and as indicating that state laws were preempted as to all subjects relating to the sales of securities, the majority in *Diamond* rejected her analysis: "Notwithstanding the effort of Justice Brown to draw analogies between this action and the issues in *Guice* [citation] and *Dahl* [citation], neither those cases nor the others on which Justice Brown relies holds that federal law preempts actions by shareholders for damages suffered as a result of market manipulation." (*Diamond, supra*, 19 Cal.4th at p. 1047, fn. 12.)[2]

In contrast to the issue of order flow payments, where the SEC has legalized the practice in question as a matter of federal law, there is no SEC rule, NASD rule, or other federal law or regulation allowing the very different practice of trading ahead, which is in issue here. In fact, the practice of trading ahead is not permitted by federal civil or criminal law. In the context of criminal prosecutions, the federal courts have held that trading ahead by a broker constitutes the crimes of mail fraud and wire fraud under federal law, since it violates a broker's fiduciary duty to his customers. (*United States v. Dial* (7th Cir. 1985), 757 F.2d 163, 168-169, cert. den. (1985) 474 U.S. 838 [106 S.Ct. 116, 88 L.Ed.2d 95] (*Dial*).)[3]

We do not accept Morgan's assertions that Congress or other federal lawmakers intended to legalize the practice of trading ahead and make it the basis of a uniform federal system allowing violations of federal criminal law by securities brokers, and preempting the application of state laws to this

---

[2]*Guice* and *Dahl* were followed by the Second District in *McKey v. Charles Schwab & Co.* (1998) 67 Cal.App.4th 731, 737-739 [79 Cal.Rptr.2d 213] (*McKey*), a case which also involved order flow payments, and which preceded *Diamond*. *McKey* was among "the others [cases] on which Justice Brown relie[d]" in her dissent in *Diamond*, and which our Supreme Court declined to follow outside the context of order flow payments. (*Diamond, supra*, 19 Cal.4th at p. 1047, fn. 12 (maj. opn.); *id.* at p. 1068 (dis. opn. of Brown, J.).) We are bound by the decision of the majority in *Diamond*. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937] (*Auto Equity*).) In addition, although Morgan has cited numerous unpublished and out of state authorities, it has not cited or sought to distinguish *Diamond*, a decision which is binding on us. Nor has Morgan acknowledged that its arguments based on *Guice* and *Dahl* were rejected by the majority in *Diamond*.

[3]Morgan has not cited or distinguished *Dial*.

unlawful practice. Application of state laws such as the UCL to forbid the practice of trading ahead would not impair or conflict with any provision of federal law, but would be consistent with the purposes and aims of federal law.[4] (See *Washington Mutual Bank v. Superior Court* (1999) 75 Cal.App.4th 773, 787 [89 Cal.Rptr.2d 560] [permitting UCL action to proceed, because it was consistent with, and helped to implement the goals of, federal law].)[5] In fact, since trading ahead constitutes the crime of mail fraud under federal law, it is actionable under the UCL, which borrows other law, including federal law, to define the "unlawful" practices that are UCL violations. (See *Cel-Tech, supra,* 20 Cal.4th at pp. 180-181; cf. also *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 562-573 [71 Cal.Rptr.2d 731, 950 P.2d 1086] [no preemption of UCL claims relating to tobacco sales to minors].)[6]

We also find instructive the case of *Fenning v. Glenfed, Inc.* (1995) 40 Cal.App.4th 1285, 1290-1299 [47 Cal.Rptr.2d 715] (*Fenning*). This state appeals court decision held that the UCL was not preempted by federal law, as to claims that a broker and bank violated the UCL by unfairly soliciting depositors of a bank to invest in unsafe securities. (See also *Newman v. First California Co.* (1975) 47 Cal.App.3d 60, 65-68 [120 Cal.Rptr. 494] [applying California law to claims that NASD-regulated broker did not properly and timely execute a customer's stock trade, and concluding that a defense "did not exist" based upon an asserted application of NASD regulations or laws other than California law]; *Hobbs v. Bateman Eichler, Hill Richards, Inc.* (1985) 164 Cal.App.3d 174, 201-204 [210 Cal.Rptr. 387] [allowing a state law claim for breach of fiduciary duty against a broker where the SEC had not acted regarding a particular broker practice].)

The only contrary authority supporting Morgan's claims of sweeping federal preemption is apparent dictum contained in an unpublished decision of the Ninth Circuit Court of Appeals, which that court has specified as not

[4]Appellant's state law claim for breach of fiduciary duty is also not preempted, for the same reasons. In fact, such a violation of fiduciary duty establishes one basis for both the federal mail fraud violation and the UCL violation.

[5]We therefore find irrelevant the numerous other out of state or unpublished cases cited by Morgan, holding that a state law is preempted if it expressly conflicts with federal law. (See, e.g., *Levitin v. PaineWebber, Inc.* (2d Cir. 1998) 159 F.3d 698, 705-706 [state law regulating interest payments on margin transactions by brokers held preempted, because state law conflicted with federal laws on the same subject].) The instant case concerns solely California law, not preemptive or conflicting federal law. (See *Diamond, supra,* 19 Cal.4th at p. 1057.)

[6]Appellant suggests that we should take judicial notice of his client agreement with Morgan, which provides for the application of state law to contractual disputes between the parties. "While judicial notice is permissible under Evidence Code sections 452 and 459, we deny the request." (*Diamond, supra,* 19 Cal.4th at pp. 1058-1059, fn. 19.) We do not find the parties' contractual agreement relevant to the legal issue before us, federal preemption.

citable authority (see U.S. Cir. Ct. Rules (9th Cir.), rule 36-3), and which we also find unpersuasive here. (*Shearson Lehman Bros. v. Greenberg* (9th Cir., July 3, 1995, No. 93-55535) 1995 Lexis 17313.) In this unpublished decision,[7] which did not address recent California case law or the precise issue before us, a panel of the Ninth Circuit upheld the dismissal on summary judgment of a pro per plaintiff's claims brought against his broker, based on other types of alleged violations of the UCL. The Ninth Circuit concluded the federal court had removal jurisdiction, contrary to the ruling of the federal court in the instant case; the UCL did not apply; and the appellant lacked standing. The court then added, in an apparent dictum or semble, "In fact, it seems likely that § 17200 is preempted entirely by federal securities laws. See 15 U.S.C. § 78bb."

The federal statute cited by the Ninth Circuit in aid of its statement, 15 United States Code section 78bb, is the same statute cited by our Supreme Court in *Diamond* as supporting its holding that state laws are *not* preempted by federal securities laws. (*Diamond, supra*, 19 Cal.4th at p. 1057, fn. 17.) We take note that 15 United States Code section 78bb provides, in pertinent part, "[t]he rights and remedies provided by this chapter *shall be in addition to* any and all other rights and remedies that may exist in law or in equity . . . ." (Italics added.)

The decisions of the Ninth Circuit Court of Appeals cited by Morgan are not binding on us.[8] We view the dicta contained in its unpublished decisions, which may not be cited to the federal courts in the Ninth Circuit, as particularly unpersuasive authority. In construing 15 United States Code section 78bb, we also agree with and are bound by the majority of our own Supreme Court in *Diamond* that the phrase "in addition to" discloses a

---

[7] We note in this respect the existence of a problem that is beyond our powers to resolve. The Ninth Circuit rule concerning the citation of unpublished opinions of that court, rule 36-3, bars the citation of its unpublished cases in federal court, but not in state court. Our own rule of court on this topic, rule 977 of the California Rules of Court, does not explicitly speak to this problem. We suggest that our Supreme Court may wish to address this apparent oversight in rule 977, by considering the adoption of an amendment that is consistent with the Ninth Circuit rule as to such unpublished cases.

[8] Morgan also cites us to a published Ninth Circuit decision, *Spinner Corp. v. Princeville Development Corp.* (9th Cir. 1988) 849 F.2d 388 (*Spinner*), which was decided under Hawaii law. *Spinner* held that the Hawaii "baby FTC Act" which was similar in many ways to the UCL, was inapplicable to securities law violations, because the Hawaii Legislature in passing the law had so indicated. The California UCL, by contrast, has always been given a broad and sweeping ambit by our Legislature and our Supreme Court. (*Cel-Tech, supra*, 20 Cal.4th at p. 181; *Diamond, supra*, 19 Cal.4th at p. 1047, fn. 12.) The UCL contains no language supporting an exclusion for securities, and under the plain language of the UCL, we cannot create such an exclusion. (*Ibid.*) In addition, we are bound (as would be the Ninth Circuit, on this issue of state law) by our own Supreme Court's broad interpretation of California's UCL. (See *Auto Equity, supra*, 57 Cal.2d at p. 455.)

Congressional intent to leave state laws in place, and not to preempt them. (*Diamond, supra,* 19 Cal.4th at p. 1057, fn. 17; *Auto Equity, supra,* 57 Cal.2d at p. 455.)[9]

## III. DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with instructions to overrule the demurrer.

Jones, P. J., and Kramer, J.,* concurred.

A petition for a rehearing was denied May 26, 2000, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied August 16, 2000. Brown, J., was of the opinion that the petition should be granted.

---

[9]Morgan also attempts to raise several miscellaneous issues that relate primarily to class certification. Because a motion to certify the class is yet to be brought and ruled upon, such contentions are premature. We decline the suggestion that we should issue an advisory opinion on matters that were not the subject of the lower court's ruling.

*Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.