[Sac. No. 4485. In Bank.—August 1, 1933.]

F. E. POHL, Appellant, v. JAMES MILLS, JR., et al., Respondents.

W. T. Belieu for Appellant.

M. J. Rankin for Respondents.

THE COURT.—This action was brought by plaintiff for the purpose of rescinding four separate contracts for the leasing by him, with the option of perpetual renewal, of four roadside booths for the dispensing of nonintoxicating drinks, known as "Jumbo Lemons", together with the exclusive territorial right to operate said Jumbo Lemons in the district designated in each separate contract. Plaintiff claims the right to rescind and cancel said contracts because of certain alleged misrepresentations and fraud practiced upon him by defendants which induced him to enter into said contracts. Defendants filed a cross-complaint alleging that the repudiation of said contracts constituted a breach thereof. Judgment went for the defendants who were awarded damages in the sum of $2,947 with costs. From this judgment plaintiff appeals.

In 1924, James Mills, Jr., and Robert A. Rankin, employees of the James Mills Orchard Company, a large grower of lemons and other citrus fruit, built and operated what they termed a "Jumbo Lemon," which was a structure some twelve feet long and about six feet in diameter, shaped to resemble a lemon and painted a lemon color, and having in all respects the general appearance of a giant lemon. It was intended as a roadside booth for the dispensing of nonintoxicating drinks, and soft drinks were sold through openings in each side by an operator who worked inside of the structure. In 1925 the two defendants formed a partnership for the purpose of building and operating Jumbo Lemon booths and leasing them to operators. Application was made by the attorneys for said partners for a patent on the design of the booth. This application was rejected upon the ground that it was no invention, the design being merely a simulation of a well-known object. The rejection of the patent was brought to the knowledge of the partners in January, 1925, by a letter from the patent attorneys handling the application. Shortly thereafter an application was made for a copyright of the structure itself. Apparently even before the application was made one at least of the

partners was representing that the structure was a copyright structure as the following letter, dated February 5, 1925, was written by James Mills, Jr., to the attorneys in San Francisco: "We have your letter of the 3d concerning the Jumbo Lemon Sales Booth. If it is impossible for us to patent or copyright the design of the lemon booth could we copyright the title 'Jumbo Lemon'? We are contemplating establishing a line of these stands and do not wish to start business going and then have others in the position of being able to duplicate both the stand and the name and cut into the business. Several have asked how the lemon was constructed already and stated that they contemplated putting some in, and we *by telling them the same was copyrighted* have sidestepped the issue to date." (Italics supplied.) On July 7, 1925, the attorneys notified the partners that the application to register a copyright for the "Jumbo Lemon" sales-booth had preliminarily been rejected upon the ground that a sales booth which was lemon shaped in configuration was not a work of fine art, and suggested that an application for a registration of a *photograph* of the booth be made. The partners were informed on August 6, 1925, that the application for a copyright of the booth itself had been finally rejected. The only procedure possible, therefore, was a registration of a photograph of the booth, and this was done, and on August 25, 1925, a certificate of copyright registration was issued in the name of James Mills, Jr., The certificate stated, "THIS IS TO CERTIFY . . . that ONE copy of the PHOTOGRAPH named herein, not reproduced for sale, has been deposited in this Office under the provisions of the Act of 1909, and that registration of a claim to copyright for the first term of 28 years, has been duly made in the name of JAMES MILLS, JR. . . . Title of Photograph JUMBO LEMON BOOTH. . . . " Thereafter the partners commenced to establish a chain system of these booths throughout the state of California. The Jumbo Lemon booths were leased to persons interested by written lease contracts, four of which contracts are involved in this action. In November, 1926, the plaintiff negotiated with the defendants for the leasing of four of the structures to be operated at or near Gilroy, Kings City, Redwood City and Paso Robles, California.

The contracts are in writing and are in evidence. They are identical in form and substance except for the fact that each of said contracts specifies a different territory granted for the operation of said booths. The contracts commence with the statement that, ''Whereas the lessors are the owners of the exclusive right to maintain and operate Jumbo Lemons, a form of roadside stand for mixing and dispensing nonintoxicating drinks, which Jumbo Lemon is a structure copyrighted by James Mills, and lessors are establishing a chain of said Jumbo Lemons throughout the State of California and other states to operate the same through lease contracts, and to maintain a standard system of operation, and whereas the lessee is desirous of operating one of said stands at or near [specifying the location of the stand] upon the terms and conditions imposed by the lessors and hereinafter set forth; Now Therefore, . . . the lessors hereby let and lease to said lessee and lessee hereby hires and takes from lessors one of the said Jumbo Lemons, together with the right to maintain and operate the same at a location in or near said above described city.'' The contracts then set forth the obligations of the lessors, the most important being, (1) to place upon the location secured · by the lessee one of said Jumbo Lemon structures completely equipped, and (2) to sell and deliver all lemons, oranges, other fruits and nut products to be used by lessee in said business and to charge therefor prices which would not exceed the wholesale prices of fruit of like grade and quality at San Jose. (In this regard it was set forth that the lessors had contracted with the James Mills Orchards Corporation to supply lemons, oranges and other fruits and nuts for the use of the lessors in operating their chain of Jumbo Lemons, and when the supply from that source was not available the lessors could at their option discontinue the purchase of supplies from other sources and lessee should make his own arrangements for supplying lemons, oranges and other fruits and nuts.) Then follows a statement of the obligations of the lessee, the principal ones being, (1) to pay to the lessor for said structure and equipment and the right to operate the same at the location selected by him, $1200, payable in installments; to pay for the transporting, delivering and locating of said lemon structure, and to pay in addition for the seasons commencing

with 1928, a royalty of six per cent on the gross income from the proceeds of said business, (2) to lease a lot for the location of said structure, (3) to keep the grounds, the structure and equipment clean, neat and attractive, and in every way co-operate with the lessors in standardizing Jumbo Lemon system, (4) to purchase from the lessors all lemons, oranges and other fruits and nuts which might be used in said business, (5) "to operate and keep open said Jumbo Lemon each season as long as weather conditions permit the operations thereof at a profit to the lessee", (6) to keep the Jumbo Lemon structure and equipment painted and in good repair and condition, and during the closed season to properly protect it against damage and loss, and at the end of the term or sooner termination of said lease to deliver up said structure and all equipment in good condition, and (7) to furnish the lessors with a correct statement of the accounts of said business. The contracts expressly provide that, "In the event that all of the covenants and conditions of this lease are performed and kept by the lessee, the lessors hereby grant to the lessee the option of renewing this lease for an additional term of five years from the date of termination hereof, and at the end of each five-year period thereafter, under the same terms and conditions except that the rental shall consist only of a royalty or percentage amounting to six per cent of the gross income derived from the operation of said business, payable monthly in the same manner and under the same conditions as is herein provided for the payment of such royalty."

Plaintiff operated the four Jumbo Lemon structures leased by him during the seasons of 1927 and 1928 and paid to the defendants the sum of $1200 for each of said Jumbo Lemons and paid a six per cent royalty on the gross income of said business. Thereafter, plaintiff ascertained to his own satisfaction that the defendants did not own a copyright of the structure of the Jumbo Lemon booths, and on December 7, 1928, he gave the defendants a written notice that he rescinded said lease contracts, "by reason of your fraudulent misrepresentations in regard to a material fact, in that you fraudulently and knowingly misrepresented to me that said Jumbo Lemon structure is copyrighted by you and that you were the owner of the exclusive right to maintain and operate said Jumbo Lemon structure". The notice of

rescission contained the further statement that plaintiff offered to restore to defendants everything of value received from them by reason of said lease upon the condition that they should do likewise, and contained a demand for the restoration to him of everything of value received by defendants by reason of said leases. Defendants refused to consent to the rescission of the leases, and thereafter after the commencement of this action against them, served upon plaintiff a notice of default in the performance of the conditions of said contracts, and on June 4, 1929, took possession of the four Jumbo Lemon structures, together with whatever equipment was contained therein.

Plaintiff's complaint is framed upon the theory that the misrepresentation was made to him during the negotiations for the leasing of the Jumbo Lemon structures, that the defendants owned an exclusive right to operate and maintain said Jumbo Lemons based upon a copyright of the structure itself, and that by virtue of said copyright no one could duplicate the structure and enter into competitive business against him; that this misrepresentation was in fact false since the defendants did not own a copyright of the design of the structure itself; that the defendants at the time of making this misrepresentation knew that it was false; that relying upon such statements by the defendants he was induced to enter into the lease contracts, and he was thereby induced to expend money in the establishment of the business which he would not have expended had he been aware that the defendants did not own a copyright of the Jumbo Lemon structure. In short, it is the gist of plaintiff's cause of action that he bargained for the use of an exclusive right to operate and maintain a business adequately protected by a copyright upon the *structure* itself, and that he was entitled to receive that for which he bargained, and that no other form of protection such as a copyright of a *photograph* of the structure, or a *possible* exclusive right of use based upon prior user by defendants of said structures, could be substituted therefor. Being entitled to exactly what he bargained for, the plaintiff insists that since he did not receive the precise thing for which he bargained, he is entitled to rescind his contracts and it is not necessary for him to show any loss of income caused by an encroachment upon his business, as his loss consists of the money expended by

him in the acquiring of something which he had no desire to acquire, and which he would not have acquired had he been aware of the truth of the situation and had not been misled by the misrepresentations of the defendants.

It is apparently defendants' theory that notwithstanding the fact that the defendants did not own a copyright of the structure, they had "something just as good" and that as the plaintiff, up to the time of the action, had not suffered pecuniary loss to his income, he could not complain and could not rescind said contracts.

Defendants' cross-complaint alleges that on the seventh day of December, 1928 (the date of the notice of rescission by plaintiff), the plaintiff "without any valid reason or ground therefor, repudiated and abandoned said lease and the business established in accordance with the terms thereof, and refused to further perform many of the terms and conditions of said lease". It alleges that on said day the plaintiff converted to his own use all of the articles of personal property described in said leases, and that said plaintiff has refused to deliver the same to the defendants. Defendants prayed for the value of said equipment, the loss of royalty upon said business for the term of three years due to the abandonment of said business by the plaintiff, for the loss of profits upon the sale of fruits during the term of said leases, and for the loss sustained by the fact that plaintiff did not keep said structures in good repair and deliver them to the defendants in good condition. The defendants in addition sought damages for the "malicious conduct" of plaintiff in attempting to break up the Jumbo Lemon chain organization by stating that said leases were invalid and procured by misrepresentations and could not be enforced by the lessors, thereby causing dissension and differences among the operators of Jumbo Lemons and destroying the co-operation among said lessees and operators.

There is in the record the testimony of Chester Vaughan, the agent for the defendants who had first contacted the plaintiff, that a booth similar to the Jumbo Lemon booths had been operated by an outsider in San Diego County and was still operating, but it was conceded by the plaintiff that during his operation of said Jumbo Lemon booths there had been no other identical or similar booths operated in the territory granted to him by the leases. It also seems to be

conceded that the plaintiff operated at a loss and that this loss was occasioned rather by the lack of business than by any intrusion or encroachment upon his exclusive right to operate. It is apparent from a perusal of the findings that the judgment of the trial court rendered in favor of the defendants was predicated upon the theory that the protection afforded by the defendants, based either upon the copyright registration of a *photograph* of the structure, or a possible right based upon a prior user by the defendants, was an adequate substitute for the protection arising out of an ownership by defendants of a copyright to the structure itself, coupled with the additional fact that there had been no encroachment upon plaintiff's business by the use of any identical or similar structure by any competitor in plaintiff's territory. In other words, the trial court accepted the defendants' theory that no injury resulted to plaintiff by virtue of the fact that he had suffered no loss of income.

The trial court expressly found that "defendants did state to plaintiff prior to the execution of said lease and in said lease that the said lessors were the owners of the exclusive right to maintain and operate 'Jumbo Lemons' a form of roadside stand for mixing and dispensing nonintoxicating drinks, *which Jumbo Lemon was a structure copyrighted* by James Mills, Jr. (italics supplied) and that lessors were establishing a chain of said Jumbo Lemons throughout the State of California and other states, to operate the same through these contracts and maintain a standard system of operation." There are also findings to the effect that the plaintiff "did take and accept" the leases from defendants set out as exhibits, and "did make certain payments therefor as provided in said leases" and that he did give the notice of rescission, setting it out in full. Then follows, however, findings which negative the claim that such representations were false and fraudulent and were knowingly made to deceive the plaintiff or did induce him to enter into said contracts. There is in addition the finding that "plaintiff took possession of said Jumbo Lemon as lessee thereof and as a licensee under defendants' copyright and other forms of lawful protection afforded by defendants and advantages secured as an operator in the so-called 'Jumbo Lemon' chain organization". There is a finding that plaintiff paid to defendants and in the operation of plaintiff's business a total

sum of $6,646.69, and that he received from the operation for the seasons of 1927 and 1928 the gross sum of $4,969, but there is the further finding that "no person has interfered with his said right or infringed upon the same" and that plaintiff "has not sustained a pecuniary loss or injury in the sum of $1667.69, or in any sum or amount whatever, or any manner whatever, by reason of any representations of defendants or either of them". The final finding is to the effect that "said copyright registered in the name of James Mills, Jr., was not and is not invalid, and that the said plaintiff had at the time prior to the execution of said lease ample opportunity and means of investigating and determining the rights of defendants to construct, own, lease and operate Jumbo Lemons and the protection afforded them under the law and by its copyright". It is apparent that the court in this final finding was dealing with the copyright of the *photograph* of the structure, rather than the copyright of the structure itself, and that although it is true that "the copyright registered in the name of James Mills, Jr. [meaning the copyright of the photograph] was not and is not invalid", neither this finding nor the other findings squarely meet the issue of whether or not plaintiff was entitled to rescind by virtue of the failure of a material consideration—a copyright of the structure itself.

We are of the opinion that plaintiff was entitled to rescind said contracts and that the judgment based upon these findings cannot be sustained. ▮ There can be no doubt that the representation made was a material one and was the inducing cause of the plaintiff's entering into the contracts. If he would not have entered into the contracts if such a misrepresentation had not been made, he is entitled to rescind the contracts and be placed as nearly as possible in the same position as he was in before entering into the contracts. He was entitled to receive that for which he bargained and cannot be compelled to accept in lieu thereof, "something just as good". ▮ Moreover, if he entered into the contracts by virtue of such misrepresentation, it cannot be said that he suffered no pecuniary loss because he suffered no loss of income. If he paid more for the right to operate a business protected by a copyright structure than he would have paid for the use of the structure without a copyright protection, as there can be no doubt he did, he suffered a

pecuniary loss. And if upon a resale of the business he would be unable to secure as high a price for the business which was not protected by a structure copyrighted as he would for a business adequately so protected, he would undoubtedly suffer pecuniary loss. Moreover, we do not believe that he should be compelled to continue in the business under the apprehension of possible competitors after he learned that the business was not protected by a copyright of the structure against such competitors.

In this regard it should be stated that we see no good reason for distinguishing between those cases in which a purchaser is permitted to rescind by reason of the fact that by misrepresentation he has been induced to purchase something other or different from that which he intended to purchase, and a case such as the instant case in which the right secured by the plaintiff was a lease for a period of years with an option for perpetual renewal. In the instant case, the plaintiff invested money in the securing of a definite thing, the use of the structures and the right to an exclusive operation of the business, which right was represented to him to be protected by a copyright of the structure. He invested not only in the use of the structures and the right to operate them, but in the sense of security that he would be undisturbed in his operation, and the possibility of selling his business at a profit because it was adequately protected.

██ Upon an examination of the record we are convinced that the plaintiff has made out a good cause of action. The uncontradicted evidence in the case demonstrates the following facts: (1) The representation was repeatedly made to the plaintiff prior to the execution of the contracts that the defendants owned an exclusive right to the use of the Jumbo Lemon structures, based upon a copyright of the structure itself. Since this statement appears on the face of the contracts themselves, any attempt to deny the making of such representation would be useless. Moreover, three witnesses for the defendants, including James Mills, Jr., Robert A. Rankin, and Chester Vaughan, who first contacted the plaintiff, testified that they had represented to the plaintiff that the structure was copyrighted and that no other person could use such structure in a competitive business. James Mills, Jr., in his testimony stated that he

informed the plaintiff that they had copyright protection and while he did not use the words, "structure copyright" in his testimony, he stated that he intended the statement in the contract, "which is a structure copyrighted" as a representation to the plaintiff. Chester Vaughan, agent for the defendants, testified that "in conversation with Mr. Pohl I stated that I had always been informed that we had structure copyright protection and no one could build or in any way jeopardize our operations". And Robert A. Rankin testified that, "I remember very distinctly I showed him the statement that the contract had in it. That was the most convincing and conclusive argument I had." In fact, the trial court expressly found that such a representation had been made. (2) The Jumbo Lemon structure was not in fact a structure copyrighted. The evidence is clear that the application for a copyright of the structure had been rejected by the copyright department. The procurement of a copyright registration of a photograph of one of the structures was obviously only a subterfuge and in the face of the rejection of the copyright of the structure itself obviously cannot be considered to be an equivalent to it. (3) The representation that the Jumbo Lemon was a structure protected by a copyright and that the right to operate under a lease from the defendants was an exclusive right and that there was no possibility of anyone else engaging in a competitive business was the inducing cause of the plaintiff's entering into the contracts. In *De Garmo* v. *Petitfils Confiserie*, 93 Cal. App. 261, 270 [269 Pac. 692, 695], it was said, "The representations made to appellant were ones calculated to induce him to buy the stock, and he did in fact make the purchase; therefore, the presumption is that the representations induced him to do so, and in order to take away his right to relief on the ground of fraud, it must be shown that he did not rely upon said representations. (*Troy etc. Co.* v. *Drivers' etc. Co.*, 14 Cal. App. 152, 155 [111 Pac. 121]; 12 Cal. Jur. 827.)" Moreover, the record clearly shows, from the testimony of the witnesses for the defendants themselves, that the plaintiff carefully inquired into the question of whether or not the structures were adequately protected by a copyright. As above noted, Robert A. Rankin, testified that this was the "most convincing and conclusive argument I had". Entirely eliminating

from consideration the testimony by the plaintiff that the representation that the Jumbo Lemon was a copyrighted structure was the inducing cause of his entering into the contracts, the record clearly shows that this was in fact the inducing cause, and that if he had not been led to believe that the structure was copyrighted that he would not have invested his money in the business. (4) The plaintiff was not afforded an opportunity to examine the papers in connection with the copyright. James Mills, Jr., testified that when plaintiff inquired about the copyright papers during the negotiations at Maxwell, he informed him that they were at Hamilton, or in the safe deposit box in the bank at Chico. It is apparent that it was impossible for the plaintiff to make an examination of the papers without the co-operation of the defendant, James Mills, Jr., and that such co-operation was not afforded him. In such a situation the doctrine of *caveat emptor* has no application. (*Bechtold* v. *Coney*, 42 Cal. App. 563 [183 Pac. 841].) In *Ferguson* v. *Koch*, 204 Cal. 342 [268 Pac. 342, 344, 58 A. L. R. 1176], it is said, "Where parties deal fairly or at arm's length the rule of *caveat emptor* applies, but where honest dealing is departed from by the vendor making the false statements as of his own knowledge, the falsity of which are not known to the purchaser, such purchaser has the undoubted right to rely implicitly upon such statements and the principle has no application. In other words, the vendor must stand mute, or at least refrain from making statements calculated to deceive."

■ It is not necessary for us to determine whether or not the representations made to the plaintiff were made with the intent to deceive. In *Spreckels* v. *Gorrill*, 154 Cal. 383 [92 Pac. 1011], it is held that a defrauding party making statements which he knows to be untrue, or having no grounds for believing them to be true, will not be protected by the absence of an intent to deceive. There can be no question that the statement that the Jumbo Lemon was a structure copyrighted was knowingly made. It would appear from the testimony of James Mills, Jr., that he was under the impression that a copyright of a photograph of one of the Jumbo Lemon structures was equivalent to a copyright of the structure. A copyright of a photograph only protects the owner from a reproduction or sale by others

of the original photograph. (*Gross* v. *Seligman,* 212 Fed. 930.) In *Bleistein* v. *Donaldson Lithographing Co.,* 188 U. S. 239 [23 Sup. Ct. 298, 299, 47 L. Ed. 460], it was said, "Others are free to copy the original. They are not free to copy the copy." It is self-evident that a copyright of a photograph of one of the structures falls far short of being a copyright of the structure itself. And in the face of the fact that defendant knew that a copyright of the structure had been refused, such substitute could not afford a reasonable basis for an honest belief that such copyright did in fact afford protection to the structure itself. At any rate, by virtue of the fact that he was aware that a patent of the design of the structure had been denied, and that the application for a copyright of the structure had been refused, it was incumbent upon him to disclose such facts to the plaintiff in order that the plaintiff should have an opportunity of arriving at his own conclusions and making his decision with reference to investing his money and entering into the contracts based upon the facts as they actually existed—not upon half truths. "Though one may be under no duty to speak as to a matter, if he undertakes to do so either voluntarily or in response to inquiry, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which materially qualify those statements. If he speaks at all he must make a full and fair disclosure." (*Sullivan* v. *Helbing,* 66 Cal. App. 478 [226 Pac. 803, 805].)

It is apparent from the above discussion that all the elements necessary to establish plaintiff's case for rescission were adequately made out, and that a judgment in his favor should have been granted. It follows that the defendants' cause of action, based as it was upon the ground that the plaintiff was not entitled to rescind said contracts, finds no support in the record.

Judgment is reversed and the case is remanded for a new trial.

Rehearing denied.