EXPRESS, LLC, a Delaware limited liability corporation, Plaintiff,

v.

FETISH GROUP, INC., a California corporation, Defendant.

No. CV 05 2931 JTLx.

United States District Court, C.D. California.

Sept. 5, 2006.

Lynda Zadra–Symes, Diane Reed and David Jankowski of Knobbe, Martens, Olson & Bear, Irvine, for Fetish Group, Inc.

Frank Colucci of Colucci & Umans, New York and Diana Torres, O'Melveny & Myers, Los Angeles, for Express LLC.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [61]

WILSON, District Judge.

### I. INTRODUCTION

This case originated as a copyright dispute over a camisole. Plaintiff Express,

LLC ("Express") is a retailer of men's and women's clothing. Defendant Fetish Group, Inc. ("Fetish") designs, manufactures, and distributes clothing for men, women, and children. Fetish designed and obtained a copyright for a tunic referred to as the "GH268 Tunic." In the spring of 2005, Express began selling a similar long camisole ("Long Camisole"). Fetish warned Express' counsel of its potential infringement of Fetish's copyright to the tunic, and in response, Express temporarily withdrew its Long Camisole from the market during the height of the 2005 spring season.

After investigating Fetish's copyright claims, and discovering that the lace used in the tunic was in the public domain, Express resumed sales of its Long Camisole. Express also filed suit for damages and declaratory relief. Counts I & II of Express' complaint included claims under the Copyright Act of 1976, Count III claims that Fetish fraudulently misrepresented the scope of its copyright, and Count IV claims that Fetish committed an unlawful or unfair business practices in violation of the Cal. Bus. & Prof.Code § 17200.

Fetish filed an answer and a counterclaim alleging that Express infringed its copyright. In an Order issued on March 27, 2006 ("Order"), this Court found that Fetish's GH268 tunic deserved thin copyright protection, the Express Long Camisole is substantially similar to the GH268 Tunic, and therefore Express infringed Fetish's copyright in the GH2658 tunic. (Order at 31.) On July 19, 2006, Fetish filed a motion for summary judgment on Express' fraud and unfair business practices claims (Counts III & IV).

As more fully described below, the Court GRANTS Fetish's motion for summary judgment. The Court GRANTS Fetish's motion on Count III (fraud) because Express has failed to point to evidence sufficient to present a triable issue of fact with respect to the element of damages. Similarly, the Court GRANTS Fetish's motion on Count IV (unfair business practices) because Express has failed to point to evidence sufficient to present a triable issue of fact of harm or damages.

## II. FACTS

Fetish designs, manufactures, and distributes, distinctive, high-quality clothing throughout the United States and around the world. Fetish's co-owner, Michele Dahan ("Dahan"), is the principal designer for Fetish. She designs a women's clothing line for Fetish under the brand name "Gold Hawk." In 2003, Dahan allegedly designed a tunic for the Gold Hawk collection known internally at Fetish as the GH268 tunic ("GH268 Tunic").

In preparation for the Spring 2005 season, which runs from February to July, Express ordered approximately 298,559 units of a thigh-length camisole ("Express Long Camisole") from its manufacturers in ten different spring colors.

In February 2005, Fetish's counsel informed Express' counsel that the Express Long Camisole violated Fetish's copyright in the GH268 Tunic. Shortly thereafter, Express removed its Long Camisole from all of its approximately 792 stores nationwide and placed it in inventory. (Stevens Supp. Decl. Ex. 1 ¶ 11–12).

On March 4, 2005, Fetish applied to register its copyright in the GH268 Tunic with the United States Copyright Office ("Copyright Office"). Fetish filed two applications on the same day, both signed by Fetish's President, Raphael Sabbah. The first application was for a work entitled "Lace Tunic GH268." (Sabbah Decl. ¶ 5, Ex. 1) Fetish described the "nature of the work" as a "garment with lace and embroidery design." (*Id.*) The second application was for a work entitled "Lace with

Roses (GH268)." (*Id.* at ¶ 7, Ex. 2.) Fetish described the "nature of the work" as a "lace design." (*Id.*)

The Copyright Office accepted the first application, but deleted the phrase "garment with" from the application "because this phrase implied [a] claim in an item of wearing apparel." (*Id.* at ¶ 9, Ex. 3.) The Copyright Office denied the second application because it viewed the "lace design" in the second work as the "same" as the first. (*Id.*)

After learning of Fetish's copyright, Express contacted its manufacturers in the Far East to determine the origin of the lace trim that had been used in the production of the Express Long Camisole. After concluding that the lace trim used in the Express Long Camisole was in the public domain, Express confronted Fetish's counsel with this information before filing suit.

On April 21, 2005, Plaintiff Express filed a complaint for declaratory relief, fraud, and unfair competition. Defendant Fetish filed an answer, in which Fetish asserted several affirmative defenses as well as a counterclaim of federal copyright infringement against Express.

On May 19, 2005, Fetish filed a supplemental registration which added the following information in section 6(a) ("Preexisting Material") of the VA copyright form: "The lace trim on the garment is preexisting material and Claimant claims no copyright in the lace trim." (Sabbah Decl. ¶ 12, Ex. 4.) On May 25, 2005, Fetish further amended its registration by adding the phrase "new design on garment" to section 6(b) ("Material Added to this Work"). (*Id.*)

Fetish moved for summary judgment on its counterclaim for copyright infringement, and on March 27, 2006, this Court issued an order granting Fetish's motion. The Court held that Fetish has a valid registered copyright, the copyright registration is at least as broad as the em-

broidery design, the embroidery design is original enough to deserve thin copyright protection, and the Express Long Camisole and the GH268 Tunic are virtually identical.

On July 19, 2006, Fetish moved for summary judgment regarding Counts III and IV of Express's complaint. Count III of Express' complaint alleges that Fetish fraudulently misrepresented the scope of its copyright in the GH268 Tunic. Specifically, Express alleges that Fetish made false representations that Fetish is the creator of the lace and that Express had no right to manufacture or sell any garment bearing the lace, thus inducing Express to pull its Long Camisole from the market. (Complaint ¶ 40.) Count IV of Express's complaint alleges that Fetish's alleged misrepresentations constitute unfair business practices in violation of Cal. Bus. & Prof.Code § 17200. For the reasons discussed below, this Court GRANTS Fetish's motion.

## III. DISCUSSION

Express alleges that Fetish committed fraud (Count III) and committed unfair business practices in violation of Cal. Bus. & Prof.Code § 17200 (Count IV) when it misrepresented the scope of its copyright. Specifically, Express argues that Fetish intentionally misrepresented that it created the lace trim used on the GH268 Tunic and held a copyright to the lace trim. Express claims that it relied on this misrepresentation and as a result withdrew its Long Camisole from the market during the height of the spring 2005 season, causing substantial financial losses.

Fetish argues that Express cannot prove the elements of a fraud cause of action or an unfair business practice and therefore seeks summary judgment with respect to Counts III and IV of Express' complaint. Specifically, Fetish alleges

that Express has failed to raise a genuine issue of material fact to show: (1) Fetish intended to defraud Express, (2) Express' reliance on the misrepresentation was justifiable, and (3) Express suffered any damages when it temporarily ceased sales of its Long Camisole during spring 2005.

As discussed below, the Court finds that there is no genuine issue of material fact with respect to damages. Because Express has the burden of proof for this element, Fetish is entitled to summary judgment as a matter of law. The Court is assuming, without deciding, that Express could have satisfied the other elements in its claims, but need not address those elements because of Express' failure to establish a triable issue of fact concerning damages.[1]

*A. Summary Judgment*

Federal Rule of Civil Procedure 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Tarin v. County of Los Angeles,* 123 F.3d 1259, 1263 (9th Cir.1997). The moving party is entitled to a judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 884, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp.,* 477 U.S. at 323–24, 106 S.Ct. 2548.

That burden may be met by " 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *See id.* at 323–24, 106 S.Ct. 2548; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir.2000).

*B. Count III: Fraud*

Express argues that Fetish fraudulently and intentionally misrepresented that it created the design of the lace trim in order to induce Express to pull its Long Camisole from the market during the spring 2005 season, causing Express significant financial losses.

■ California Civil Code § 1709 provides a cause of action for "fraudulent deceit." To prevail on a claim of fraud, a plaintiff must establish: (1) misrepresentation, (2) scienter or knowledge of its falsity, (3) intent to induce reliance (intent to defraud), (4) actual, detrimental, and justifiable reliance, and (5) resulting damage. *Hinesley v. Oakshade Town Ctr.,* 135 Cal. App.4th 289, 294, 37 Cal.Rptr.3d 364 (2005). On summary adjudication, a defendant "meets its burden of showing that a cause of action has no merit if [it] has shown that one or more elements of the cause of action ... cannot be established, or that there is a complete defense to that cause of action" *Marron v. Superior Court,*

---

1. However, the Court has serious concerns regarding whether Express established a triable issue of fact with respect to the other elements of fraud, particularly justifiable reliance and intent to defraud.

108 Cal.App.4th 1049, 1057, 134 Cal. Rptr.2d 358 (2003) (quoting Cal.Code Civ. Proc. § 437c(p)(2)); *see also Lujan,* 497 U.S. at 884, 110 S.Ct. 3177.

Although Express' arguments concerning the damages it seeks are vague,[2] Express appears to allege that it suffered two types of damages: (1) lost profits when Express pulled its Long Camisole from the market during the height of the spring 2005 season in reliance on Fetish's misrepresentation, and (2) costs incurred investigating the validity of Fetish's misrepresentation. Fetish argues that Express has not suffered any damages that were proximately caused by Fetish's alleged misrepresentations.

### 1. Damages for Lost Profits

#### a. Fetish Points to an Absence of Evidence of Damages

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. See *Celotex Corp.,* 477 U.S. at 323–24, 106 S.Ct. 2548. That burden may be met by " 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

 Fetish argues that the Express did not suffer any damages because Express would have had to pull its Long Camisoles despite the misrepresentation because Express' Long Camisole infringed Fetish's thin copyright. Where damages "were otherwise inevitable or due to *unrelated causes,*" no liability attaches, *Goehring v. Chapman Univ.,* 121 Cal.App.4th 353, 365, 17 Cal.Rptr.3d 39 (2004) (quoting *Kruse v. Bank of Am.,* 202 Cal.App.3d 38, 60, 248 Cal.Rptr. 217 (1988)). In *Goehr-*

*ing,* Chapman University induced the plaintiff to enroll in the University through various misrepresentations concerning its accreditation. *Id.* at 363–64, 17 Cal. Rptr.3d 39. The Court denied the fraud claim because it determined that Goehring's damages resulted from his academic dismissal, rather than Chapman's misrepresentations. *Id.* at 364–65, 17 Cal. Rptr.3d 39; *see also Kruse,* 202 Cal. App.3d at 61, 248 Cal.Rptr. 217 (holding that even though the bank's promise may have been false and fraudulent, plaintiffs' property loss was the result of their own self-created indebtedness rather than the bank's actions).

Just as in *Goehring* and *Kruse,* Express' alleged damages were inevitable and the result of its own actions rather than Fetish's misrepresentations. Even though Fetish did not hold a copyright to the lace trim pattern, Express' Long Camisole still infringed Fetish's "thin copyright" based on the embroidery design because the camisoles are "virtually identical." (Order at 30.) Therefore, regardless of Fetish's misrepresentations about the lace, Express was still barred from selling its infringing Long Camisole, and therefore Express did not suffer any lost profits. The Court finds that Express cannot simply claim that it lost money because it was unable to sell infringing tunics. Fetish has met its initial burden under Rule 56(e) by showing an absence of a genuine issue of material fact.

#### b. Express fails to identify any specific facts to show it suffered damages

Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and iden-

---

**2.** In Express' complaint, it alleges that it suffered "substantial injury and damage, and has lost gains, profits, and/or advantages." (Complaint ¶ 43). In its Opposition to Fe-

tish's motion for summary judgment, Express again vaguely states that it "suffered serious financial losses." (Plaintiff's Opp. at 20.)

tify specific facts that show a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 323–24, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu*, 198 F.3d at 1134. Only genuine disputes—where the evidence is such that a reasonable jury could return a verdict for the nonmoving party—over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

Express argues that its reliance on Fetish's misrepresentation caused significant lost profits in the spring of 2005. Express essentially argues that, but for the misrepresentation, Express could have taken actions short of pulling the Long Camisole from the market for the entire three months, and as a result, Express' lost profits could have been mitigated. As evidence of lost profits, Express points to the following statements in the declarations of Kenneth Stevens, Express' CEO:

● "Throughout February, March, and April, in reliance on Fetish's claim of copyright in the lace trim, we did not sell the Long Camisole. These months are the most crucial and significant portion of the Spring selling season. As a result, the market for such merchandise passed us by. In addition to sustaining a substantial loss of sales, we were forced to cancel orders for 123,294 units of the Long Camisole." (Stevens Decl. ¶ 21).

● When Fetish represented that it owned a copyright in the lace trim used on the Express Long Camisole, Express responded by "instructing its stores to cease all sales of the Long Camisole, and our vendors to halt all on-going production of the Long Camisole ... [taking] Express completely out of the Spring 2005 selling season with its Long Cami-

sole and [causing] Express to lose a significant marketing opportunity, including sales and profits Express would have made on its Long Camisole." (Stevens Supp. Decl. ¶¶ 5–6.)

● Express was unable to stop a large amount of its spring production of the Long Camisole. (Stevens Decl. ¶ 11.)

● After ceasing sales of its Long Camisole on February 18, 2005, Express was "unable to stop a large amount of Express' spring production of the Long Camisole." (Stevens Decl. ¶ 11.)

● Based on sales projections of other camisole styles, "Express suffered a loss of approximately $1.4 million in sales of its Long Camisole." (Stevens Supp. Decl. ¶ 10.)

Additionally, Frank Colucci, Express' lawyer, states in a declaration that if Fetish had not misrepresented that it possessed a copyright to the lace trim, he might have taken the following actions:

● "I would have considered bringing a declaratory judgment action against Fetish and to recommend to Express that it keep selling its Long Camisole."

● "I might have been able to persuade it to accept a reasonable sum to allow Express to sell off its inventory."

● "I would have contacted Express' manufacturers to determine whether it was possible to modify the embroidery by adding other features such as additional flowers"

● "Rather than trying to cancel any orders Express had for its Long Camisole not yet produced, I would have recommended to Express that the embroidery not be included."

(Colucci Supp. Decl ¶ 42.)

■ Declarations submitted in conjunction with summary judgment proceedings must comply with the following requirements: (1) be based on personal knowl-

edge; (2) state facts as would be admissible in evidence; (3) show affirmatively that the affiant is competent to testify to the matters stated therein (i.e. no inadmissible hearsay). Fed.R.Civ.P. 56(e). For example, declarations *by attorneys* are only sufficient if the facts stated are matters of which the attorney has personal knowledge such as matters connected with the course of the lawsuit. *See, e.g., Rountree v. Fairfax County Sch. Bd.,* 933 F.2d 219, 223 (4th Cir.1991).

As discussed below, the statements in Express' declarations are *not* evidence of damages because each statement suffers from at least one of four fatal flaws: (1) lack of relevance, (2) excessive speculation, (3) generalization rather than specification, and (4) lack of foundation of personal knowledge.

### i. Stevens' Statements are not Relevant in Determining Whether Express Suffered Damages

Stevens' statements concerning the losses Express suffered when it pulled its Long Camisole from the market are irrelevant to the issue of whether Express suffered damages as a result of Fetish's alleged fraud. Regardless of Fetish's representations concerning the lace trim, Express had to pull its Long Camisole from the market because it infringed Fetish's copyright. (Order at 31.) These losses were the inevitable result of Express' infringement, and Express cannot claim them as damage from the alleged fraud.[3]

Colucci's statements are relevant because they suggest that Express might have been able to mitigate its losses if Fetish had not made a fraudulent representation. The deprivation of an opportunity to mitigate such a loss would constitute damages if evidence existed to support such allegations. However, the only statements to support such allegations are the statements by Colucci, and these statements are *not* admissible evidence as explained below.

### ii. Colucci's Statements are too Speculative to be Admissible as Evidence of Damages

■■ The Court recognizes that "the fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery." *Marsu, B.V. v. Walt Disney Co.,* 185 F.3d 932 (9th Cir.1999) (citing *Cal. Lettuce Growers v. Union Sugar Co.,* 45 Cal.2d 474, 487, 289 P.2d 785 (1955)). However, declarations that are conclusory, ambiguous, or speculative are insufficient evidence to defeat summary judgment where the movant has pointed to evidence showing an absence of a genuine issue of material fact. *See Nat'l Steel Corp. v. Golden Eagle Ins. Co.,* 121 F.3d 496, 502 (9th Cir.1997) (holding that conclusory allegations without factual support are insufficient to defeat summary judgment); *Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 918 (9th Cir.1996).

The thrust of Colucci's statements in ¶ 42 is the following three propositions: (1) if Fetish had not made a fraudulent misrepresentation, Colucci may have recommended several different courses of action; (2) Express could have mitigated its lost profits from the Long Camisoles by taking one of Colucci's suggested courses of ac-

---

**3.** In fact, if Express had failed to pull its Long Camisole from the market when it did, Express would be subject to even greater damages for copyright infringement. Therefore, even though Express is claiming that Fetish's misrepresentation concerning the lace caused it to suffer damages, Fetish's misrepresentation may have actually benefitted Express because it reduced Express' copyright liability.

tion; and (3) Express therefore suffered damages.

Colucci essentially admits that his hypothetical recommendations are mere speculation when he states "since Fetish asks this Court to speculate what would have happened had Fetish told the truth ... I would [have recommended the following courses of action.]" (Colucci Supp. Decl. ¶ 42.) Moreover, in order for the Court to find that Colucci's statements are evidence of damages, it must infer that the hypothetical actions recommended by Colucci would have helped mitigate Express' losses. Making this inference would require the Court to engage in an impermissible degree of speculation,[4] and therefore Colucci's statements fail to show that Express suffered damages. *See, e.g., Lias v. County of Alameda*, 2006 WL 13050, at *10 n. 8 (N.D.Cal. Jan.3, 2006) (holding that the plaintiff failed to produce any evidence of discrimination where plaintiff's declaration was based on hearsay and speculation); *Alvarado v. Fedex Corp.*, 2005 WL 2036026, at *1 (N.D.Cal. Aug.23, 2005) (holding that a declaration does not suffice to show a genuine issue of material fact of harassment or discrimination where the declaration is "conclusory and speculative.")

The Court recognizes that it is possible that these courses of action might have reduced Express' losses on the Long Camisoles. For example, declarations by manufacturers, management, or industry experts about the feasibility of Colucci's recommended actions might have demonstrated that Colucci's recommendations would have helped Express mitigate its

losses. However, Rule 56(e) requires that the nonmoving party go beyond the pleadings and identify specific facts that show a genuine issue for trial. *See Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Absent *any* facts other than Colucci's speculative statements, the Court finds that Express has failed to show a genuine issue for trial concerning damages.

*iii. Colucci's Identification of Specific Facts is too Generalized to Satisfy FRCP 56(e)*

Submitted as evidence of damages, Colucci's statements in ¶ 42 are too generalized to satisfy Federal Rule of Civil Procedure 56(e) which requires that affidavits set forth specific facts. *Lujan v. National Wildlife Federation* is instructive in discerning how "specific" the "specific facts" must be under Rule 56(e). 497 U.S. at 879, 110 S.Ct. 3177.

In *Lujan*, the plaintiff organization alleged that its members had been, or were threatened to be, harmed by the land withdrawal review program of the Bureau of Land Management. 497 U.S. at 871, 110 S.Ct. 3177. In support of their allegations, Plaintiff submitted affidavits by two of its members. *Id.* at 886, 110 S.Ct. 3177. One affidavit stated that the individual's "recreational use and aesthetic enjoyment of federal lands, particularly those in the vicinity of South Pass–Green Mountain, Wyoming have been and continue to be adversely affected in fact by the unlawful actions of the [government]." *Id.* (internal quotation marks omitted). Similarly, in the other

4. For example: Would the manufacturers have been able to modify the embroidery? How long would it take the manufacturers to modify the embroidery? Would the modification to the embroidery be sufficiently cost effective so that Express could still make a profit on the Long Camisoles? Even with the alteration to the embroidery, would the Long Camisole still infringe Fetish's copyright? Would knowledge that Fetish only held a copyright to the embroidery tipped the balance in negotiations so that Express and Fetish reached a settlement? No admissible evidence in the record addresses any of these questions.

affidavit the affiant claimed impairment of his use of land "in the vicinity of Grand Canyon National Park, the Arizona Strip (Kanab Plateau), and the Kaibab National Forest." *Id.* (internal quotation marks omitted).

The District Court granted summary judgment in favor of the government after finding that "the [first] affidavit on its face contains only a bare allegation of injury and fails to show specific facts supporting the affiant's allegation," and that the second affidavit was similarly flawed. *Id.* at 887, 110 S.Ct. 3177. Although the Court of Appeals disagreed with the District Court's assessment, the Supreme Court reversed the Court of Appeals. *Id.* at 887–88, 900, 110 S.Ct. 3177.

The Supreme Court explained that the purpose of Rule 56(e) is "not to replace conclusory allegations of the complaint with conclusory allegations of an affidavit." *Id.* at 888, 110 S.Ct. 3177. Additionally, the Court stated that it was improper for a court to infer missing facts in a summary judgment motion:

> It will not do to 'presume' the missing facts because without them the affidavits would not establish the injury that they generally allege. That converts the operation of Rule 56 to a circular promenade: plaintiff's complaint makes general allegation of injury; defendant contests through Rule 56 existence of specific facts to support injury; plaintiff

responds with affidavit containing general allegation of injury. *Id.* at 889, 110 S.Ct. 3177.

The Court concluded that summary judgment was proper because whether Plaintiff suffered any harms "is assuredly not satisfied by averments which state only that one of respondent's members uses unspecified portions of an immense tract of territory." *Id.* at 889, 110 S.Ct. 3177.

Analogous to *Lujan*, Express' complaint made a general allegation of injury, Fetish contested by pointing to an absence of facts to support an injury, and Express responded with affidavits once again containing a general allegation of injury. Just as the affidavits in *Lujan* were deemed flawed because they referenced the use of "unspecified portions" of a vast area of land, Express' allegations are flawed because they refer to unspecified damages based on hypothetical courses of action. Express' declarations fail to provide any specifics about the hypothetical courses of actions, such as the feasibility, cost, timing, and distribution issues involved in altering the embroidery on the Long Camisole. Express' declarations fail to declare with any specificity the extent to which such hypothetical actions could have mitigated Express' loss. Express' declarations even fail to specify a simple range in which Express estimates its damages may have fallen.[5]

As instructed by *Lujan*, this Court cannot presume missing facts which would

---

5. Express' CEO Kenneth Stevens estimated that Express suffered a loss of approximately $1.4 million in sales of its Long Camisole when it pulled the Long Camisole from the market in the spring of 2005. As noted earlier, this estimate does *not* show evidence of damages—Express had to pull its Long Camisole off the market regardless of any fraudulent misrepresentation by Fetish because the Long Camisole infringed Fetish's copyright. However, the estimate of $1.4 million could serve as an upper bounds to any amount of damages. Specifically, if Express could prove that it would have been able to mitigate its entire loss, Express would have suffered damages of approximately $1.4 million. Not only does Express fail to make this argument, but Express fails to state where it believes its damages would fall on this continuum between no damages (no mitigation was possible) and $1.4 million damages (complete mitigation was possible).

help Express establish evidence for damages. Where Express has submitted generalized affidavits and utterly failed to point to specific facts as evidence of damages, the Court finds that Express has failed to show that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Lujan,* 497 U.S. at 884, 110 S.Ct. 3177.

### iv. Colucci's Declaration Lacks a Foundation to Establish Personal Knowledge of the Damages

■ Rule 56(e) requires that affidavits "shall be made on personal knowledge." Colucci's statements about the hypothetical courses of action Express might have taken lack an adequate foundation to demonstrate that the facts stated are within Colucci's personal knowledge.

As noted above, the thrust of Colucci's statements in ¶ 42 is the following three propositions: (1) if Fetish had not made a fraudulent misrepresentation, Colucci might have recommended several different courses of action; (2) Express could have mitigated its lost profits from the Long Camisoles by taking one of Colucci's courses of action; (3) therefore Express suffered damages.

The Court recognizes that Colucci established a sufficient foundation of personal knowledge to support the first proposition. However, in order to find that Colucci's statements are *evidence of damages,* the Court would also have to accept the second proposition. Besides being speculative, nothing in the declaration suggests that Colucci has personal knowledge that his recommendations would have helped Express mitigate its lost profits. For example, there is nothing in the declaration to suggest that Colucci has personal knowledge of the feasibility or cost of changing the manufacturing process to alter the embroidery. As far as the Court can discern,

the foundation for the statements in ¶ 42 is the following two statements:

- "[T]he facts set forth in my declaration were at the time of my declaration, and still are, true of my own personal knowledge." (Colucci Supp. Decl. ¶ 2.)
- "We are intellectual property counsel to Express and have been since the formation of Express in the early '80s. I am fully familiar with the facts hereinafter set forth of my own personal knowledge." (Colucci Decl. ¶ 2.)

■ It is well settled that such statements alone are not sufficient to establish personal knowledge and competency. *Bank Melli Iran v. Pahlavi,* 58 F.3d 1406, 1412–13 (9th Cir.1995). Instead, there must be a foundation to establish *how* Colucci, an intellectual property attorney, has personal knowledge concerning Express' alleged damages.

■ Where the declarant lacks personal knowledge of the facts stated, the declarations are entitled to no weight. *Nat'l Steel Corp.,* 121 F.3d at 502 (affirming district court's exclusion of evidence due to a lack of personal knowledge in a summary judgment proceeding); *Bank Melli Iran,* 58 F.3d at 1412 (declarations by counsel in a summary judgment proceeding were entitled to no weight where counsel lacked personal knowledge). Because Express' only evidence on the issue is a declaration that lacks an adequate foundation and is not based on the personal knowledge of the declarant, no triable issue of material fact has been raised. *Taylor v. List* 880 F.2d 1040, 1046 (9th Cir.1989); *Garcia–Franco v. INS* 748 F.2d 518, 519 (9th Cir.1984).

■ Based on the foregoing reasons, the Court does not find Colucci's statements in ¶ 42 or Stevens' declarations to show evidence of damages. In the absence of *any* other evidence of damages,[6]

---

**6.** Plaintiff does not cite to any other parts of its declarations as evidence of damages. The

this Court finds that Fetish has shown that there is no genuine issue of material fact concerning damages in the form of lost profits.

### 2. Damages for the Investigation Costs

■ Express also argues that it suffered damages when it incurred the expense of sending its attorneys to the Far East to document the public domain nature of the lace trim.[7] The declarations submitted as evidence of these expenses are based on personal knowledge, are certain and ascertainable (rather than speculative), and otherwise comply with the rules of evidence. Therefore, the issue is whether such expenses constitute damages in a cause of action for fraud.

Under California Civil Code § 1709, "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." California Civil Code § 3333, the general tort damages measure, further specifies that for wrongs not arising from a breach of contract, the measure of damages is "the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

Express cites to *Pohl v. Mills*, 218 Cal. 641, 650, 24 P.2d 476 (1933) for the proposition that one who incurs more expense because another falsely states that a work is protected by copyright suffers pecuniary

damages. Express argues that it should similarly be compensated for its investigative expenses incurred as a result of Fetish's misrepresentation that the lace trim was protected by a copyright.

In *Pohl*, the plaintiff paid money to defendant in order to operate a novelty-shaped roadside beverage stand because the defendant had fraudulently represented that he had a copyright on the beverage stand. *Id.* at 651–52, 24 P.2d 476. Thus, the plaintiff's damages were essentially an increased business expense. In contrast, Express' alleged damages stem from the investigation of Fetish's copyright claims out of a concern of potential or anticipated litigation. The specific costs are derived from paying Express' attorneys to investigate the claims. Therefore, Express' expenses are more properly characterized as attorney's fees rather than the business expenses awarded in *Pohl. See e.g. Trope v. Katz*, 11 Cal.4th 274, 280, 45 Cal.Rptr.2d 241, 902 P.2d 259 (Cal.1995) (defining attorney's fees as "the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation"); Black's Law Dictionary 614 (6th ed.1990) (defining attorney's fees as "[a] charge to client for services performed (e.g., hourly fee, flat fee, contingency fee)")

■ The general rule is that each party to a lawsuit is generally responsible for its own attorney's fees "except as attor-

---

Court reviewed the record to the best of its ability in search of any evidence of damages, and found none. Furthermore, "it is not the Court's task to 'scour the record in search of a genuine issue of triable fact' ... and 'it need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could be conveniently found.'" *Lias,* 2006 WL 13050 at *1 (quoting *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1031 (9th Cir.2001); *Keenan v. Allan,* 91 F.3d 1275, 1278 (9th Cir.1996)).

**7.** Express' CEO, Kenneth Stevens, stated his declaration that Express "sent two of [its] attorneys to Hong Kong and Taiwan, at substantial expense, to document the prior existence of not just a similar lace trim, but the identical lace trim." (Stevens Decl. ¶ 17.) Stevens later stated that Express was "forced to incur the expense of sending [its] team of attorneys to the Far East to document the public domain nature of the lace trim." (Stevens Supp. Decl. ¶ 8)

ney's fees are specifically provided for by statute." Cal.Code Civ. P. § 1021. Even though Civil Code § 3333 permits recovery of damages for "the amount which will compensate for all the detriment proximately caused," Code of Civil Procedure § 1021 clearly precludes the award of attorneys fees. *Gray v. Don Miller & Associates,* 35 Cal.3d 498, 505, 198 Cal.Rptr. 551, 674 P.2d 253 (1984). Although at least four exceptions to this general rule have been created by the courts, *see id.,* none of the exceptions are applicable to the present facts.[8]

Moreover, it would be inappropriate to interpret *Pohl* to carve out an exception to this general rule and permit a plaintiff to recover attorney's fees in this copyright context. The California Supreme Court has stated that it has "moved cautiously in expanding the non-statutory bases on which awards of attorney's fees may be predicated" and want to avoid opening a "Pandora's Box of prolonged litigation." *Gray,* 35 Cal.3d at 507, 198 Cal.Rptr. 551, 674 P.2d 253. An attempt to draw a line between investigative costs that should be characterized as business expenses and those investigative costs which are fairly attributable to Express' concern over potential or anticipated copyright infringement litigation would invite protracted litigation open such a Pandora's Box. Therefore, this Court holds that Express' investigative expenses do not constitute damages for the purpose of its fraud cause of action.

Overall, this Court finds that no genuine issue of material fact exists concerning the element of damages because there is no evidence of damages based on lost profits or investigation expenses. Because Express failed to show that a genuine issue of material fact exists concerning damages,

and Express bears the burden of proof on the element of damages at trial, Fetish is entitled to judgment as a matter of law. *Lujan,* 497 U.S. at 884, 110 S.Ct. 3177. Therefore, the Court GRANTS Fetish's motion for summary judgment with respect to Count III.

### C. *Unfair & Unlawful Business Practice Claim: Count IV*

 In Count IV of its complaint, Express claimed that Fetish's misrepresentation was unlawful and unfair in violation of Cal. Bus. & Prof.Code § 17200, which prohibits any business act or practice that it "unlawful, unfair, or fraudulent." Damages or harm are an element of all three types of prohibited business practices. Because Express has failed to show that a triable issue of fact exists concerning damages or harm, *see supra* Part III.B., Express has also failed to establish an element of § 17200 and Fetish is entitled to judgment as a matter of law. *Lujan,* 497 U.S. at 884, 110 S.Ct. 3177.

### 1. *Unlawful Conduct*

 Unlawful conduct is defined as "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court,* 27 Cal. App.4th 832, 838–39, 33 Cal.Rptr.2d 438 (1994) (citing *People v. McKale* 25 Cal.3d 626, 632, 159 Cal.Rptr. 811, 602 P.2d 731 (1979)). The only unlawful practice which Express alleges that Express has committed is fraud. (Pl.'s Opp. at 21–22.) Because Fetish is entitled to summary judgment on Express' common law fraud claim, Fetish is also entitled to summary judgment on an "unlawful conduct" claim based on common law fraud.

---

**8.** The exceptions only apply where the litigation has conferred benefits on others besides the prevailing party, or where a plaintiff is required to prosecute or defend an action *against a third party* because of the tort of the defendant. *Id.*

### 2. Unfair Conduct

 Express argues that Fetish's alleged misrepresentations concerning the scope of the copyright constitute unfair conduct in violation of § 17200. Unfair conduct is "any practice whose harm to the victim outweighs its benefits." *Olsen v. Breeze, Inc.*, 48 Cal.App.4th 608, 617–618, 55 Cal.Rptr.2d 818 (1996) (citing *Motors, Inc. v. Times Mirror Co.*, 102 Cal.App.3d 735, 740, 162 Cal.Rptr. 543 (1980)).

Express claims that Fetish "significantly harmed and threatened competition, and violated the spirit of the antitrust laws" when it made the alleged fraudulent misrepresentation concerning the scope of its copyright. (Pl.'s Opp. at 23.) Express also claims that Fetish used the alleged misrepresentation as "leverage to force Express to withdraw its product from the market." (Pl.'s Opp. at 23.)

For the reasons set forth *supra* Part III.B, Express has failed to point to *any* evidence suggesting that it suffered *any* harm.[9] Additionally, the garment industry was not harmed when Express ceased its *infringing* activity. Whether the industry suffered harm because Express was unable to sell an altered (non-infringing) camisole is too attenuated and speculative to constitute damages.

On summary judgment the moving party is entitled to a judgment as a matter of law where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Lujan*, 497 U.S. at 884, 110 S.Ct. 3177. . In the absence of a showing of any harm or damages, the Court obviously cannot weigh whether the alleged harm outweighed its alleged benefits. Therefore, Fetish is entitled to judgment as a matter of law.

### 3. Fraudulent Conduct

 "Fraudulent" as used in § 17200 "does *not* refer to the common law tort of fraud but only requires a showing members of the public are likely to be deceived." *Olsen*, 48 Cal.App.4th at 617–618, 55 Cal.Rptr.2d 818 (citing *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1267, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992)). Therefore, while Express' § 17200 claim cannot survive summary judgment by a showing that Express was deceived by Fetish's representations, the claim could survive if Express pointed to evidence suggesting that Fetish's representations were likely to deceive members of the public.

Express does not point to any evidence suggesting that the representations concerning the copyright were disseminated to the public, let alone likely to deceive the public. Therefore, Express has failed to raise a triable issue of material fact for a cause of action under § 17200 based on "fraudulent conduct."

Overall, Express has failed to show that a genuine issue of material fact exists concerning at least one element of the cause of action under § 17200, and because Express bears the burden of proof at trial, Fetish is entitled to judgment as a matter, of law. *Lujan*, 497 U.S. at 884, 110 S.Ct. 3177. Therefore, the Court GRANTS Fetish's motion for summary judgment with respect to Count IV.

---

**9.** *qad inc. v. ALN Assocs., Inc.*, 770 F.Supp. 1261 (N.D.Ill.1991), *aff'd* 974 F.2d 834 (7th Cir.1992), holds that it is anticompetitive for a party to threaten legal action against competitors based on fraudulent copyright claims. While both parties debate the applicability of *qad* to the facts in this case, the Court finds *qad* irrelevant to the analysis. Fetish's actions may have been anticompetitive *if they had harmed Fetish or the industry*, however, absent injury of harm, Express' cause of action for an unfair business practice cannot survive summary judgment where Express has failed to show any evidence of harm.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Fetish's motion for summary judgment on Counts III and IV.

IT IS SO ORDERED.